Calvin Joseph SMITH, Appellant

v.

The STATE of Texas.

No. PD–1486–06.

Court of Criminal Appeals of Texas.

June 27, 2007.

---

William F. Carter, Bryan, for Appellant.

Lisa C. McMinn, Assistant State's Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, J., delivered the opinion of the Court in which MEYERS, WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

The appellant was indicted for the capital murder of a child younger than six

years of age for the death of his daughter, who was five months old when she died. He pled guilty in an open plea proceeding to the reduced charge of reckless injury to a child, a second degree felony, and was assessed the maximum punishment of twenty years' confinement in the penitentiary and a $10,000 fine. On appeal, the Fourteenth Court of Appeals reversed the judgment and remanded the cause to the trial court for re-assessment of punishment.[1]

The court of appeals held that the trial court erred in considering extraneous misconduct evidence in making its normative decision of the appropriate punishment to assess within the applicable range because the State failed to establish that the appellant committed that misconduct to a level of confidence beyond a reasonable doubt, as required by Article 37.07, Section 3(a)(1) of the Texas Code of Criminal Procedure.[2] The extraneous misconduct was not developed in testimony at the punishment hearing, however, but was contained in a pre-sentence investigation ("PSI") report which the trial court had ordered to be prepared pursuant to Article 42.12, Section 9(a) of the Code of Criminal Procedure.[3] Under Article 37.07, Section 3(d) of the Code, a trial court is expressly authorized to "consider" a PSI when assessing

1. Smith v. State, —— S.W.3d ——, 2006 WL 1765929 (Tex.App.-Houston [14th], No. 14–05–00031–CR, June 29, 2006) (not yet reported).

2. Tex.Code Crim. Proc. art. 37.07, § 3(a)(1) ("Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to ... any other evidence of an extraneous crime or bad act that is shown beyond a

reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.").

3. Tex.Code Crim.Proc. art. 42.12, § 9(a) ("... before the imposition of sentence by a judge in a felony case ... the judge shall direct a supervision officer to report to the judge in writing on the circumstances of the offense with which the defendant is charged, the

punishment.[4] In its petition for discretionary review, the State Prosecuting Attorney (SPA) now contends that a trial court may consider extraneous misconduct evidence, even if it does not meet the threshold "beyond a reasonable doubt" standard for admissibility under Article 37.07, Section 3(a)(1), if it is contained in a PSI that the trial court has ordered pursuant to Section 3(d). We granted the State's petition to examine this contention, and also to address, if necessary, the SPA's alternative contention that in any event the court of appeals erred to find that the extraneous misconduct was not established beyond a reasonable doubt.[5]

## FACTS AND PROCEDURAL POSTURE

### Guilty Plea Proceedings

The appellant entered his guilty plea on April 29, 2004. The trial court granted the State's motion to reduce the charge from a capital offense and admonished the appellant. In support of the plea, the prosecutor offered a written stipulation of evidence and waiver of rights that the appellant signed. In that stipulation the appellant admitted that on November 20, 2000, he had "recklessly cause[d] serious bodily injury to Kiana Smith, a child 14 years of age or younger, by striking her in the abdomen." This is the only information the trial court had before it when it accepted the appellant's guilty plea. The trial court ordered a pre-sentence investigation, specifically requesting that the PSI contain "whatever statement [the appellant] made, whatever findings we have from medical doctors and things of that nature."

### Punishment Proceedings

A hearing on punishment commenced on September 8, 2004. The only evidence that the State offered was the PSI. The appellant objected that the PSI contained references to injuries that Kiana had sustained in the several weeks before the abdominal injury that killed her and that there was no proof beyond a reasonable doubt that the appellant inflicted those injuries. The trial court took this objection under advisement, declined to admit the PSI into evidence at this time, and proceeded to hear the appellant's witnesses.[6] The last witness the appellant

---

amount of restitution necessary to adequately compensate the victim of the offense, the criminal and social history of the defendant, and any other information relating to the defendant or the offense requested by the judge.").

4. Tex.Code Crim.Proc. art. 37.07, § 3(d) ("When the judge assesses the punishment, he may order an investigative report as contemplated in Section 9 of Article 42.12 of this code and after considering the report, and after the hearing of the evidence hereinabove provided for, he shall forthwith announce his decision in open court as to the punishment to be assessed.").

5. We also granted review of the SPA's contention that the court of appeals erred in failing to address whether the appellant had preserved error with respect to his appellate complaint that the trial court erred to consider the extraneous misconduct contained in the PSI. However, upon a fuller review of the appellate record, the SPA has filed a motion to dismiss this particular ground in his petition. We therefore dismiss that ground as improvidently granted.

6. The appellant produced ten reputable witnesses, including family members and friends, former employers, and the elected Criminal District Attorney of an adjoining county, to testify to the appellant's good character for peaceableness and his ability to abide by the terms and conditions of probation. At a later hearing, after the trial judge announced that he intended to sentence the appellant to the maximum sentence of twenty years for a second degree felony, he had this to say about the appellant's character witnesses:

And I do want to say this about the wonderful witnesses that were brought here.

called was Sheila Hugo, the community supervision officer who prepared the PSI. She testified that the appellant had no criminal history (thus establishing his eligibility for community supervision) and no history of drug or alcohol abuse. On cross-examination she agreed that, despite these factors favoring the appellant, in the PSI she had recommended that the appellant serve "pen time."

The trial judge then questioned Hugo on the record. According to medical records that Hugo had apparently had with her, Kiana had last been to see the pediatrician on October 24, 2000, approximately a month before her death. At that time Kiana apparently suffered no major health problems. Hugo also testified that the appellant was one of three caretakers for Kiana, the other two being Kiana's mother and her maternal grandmother.[7] But Hugo was unable to tell the judge specifically whether, at any time between Kiana's last visit to the doctor on October 24th and the date that the appellant had brought her to the hospital with her fatal injury, on November 19th, the appellant had had exclusive possession of her. She was only able to establish that Kiana was in the appellant's care between 10:00 a.m. and 6 p.m. on November 19th, at which time he

had brought her to the hospital. With this, the appellant rested his case at the punishment hearing.

At this juncture, the trial court complained, "I don't know what he's pleading guilty to, what act, what reckless act he is really pleading guilty to." The PSI (which had still not been admitted into evidence) mentioned other injuries that Kiana had suffered in the weeks before her death, including rib fractures that had occurred ten to fourteen days before she died, and abdominal bruising that was two to three days old. Also, according to the PSI, both her legs were also fractured, although these injuries were also already in the healing stage by the time of her death. The prosecutor assured the trial court that these were not the injuries that were the subject of the indictment that the appellant had pled guilty to.

The PSI also mentioned a fatal abdominal injury that "was believed to have been sustained during a range of six to twelve hours prior to arrival at the hospital; however, the range could have been much longer or shorter, depending on the victim." This was the injury that the appellant had plead guilty to, the prosecutor explained. The appellant then reiterated his objection to the older injuries, arguing

My friend, Bill Bennett [the Criminal District Attorney from the adjoining county], my friend who is out here today—and I know how much he thinks of this family and I have great respect for what you have said. Talking about [one of the appellant's former employers]. I have great respect for you coming up here and giving your opinion about this man, and no doubt it's true. I believe every word you have said. And I certainly believe Bill Bennett, the District Attorney over in Madison County who is my dear friend and who I admire very much. And the other people, wonderful family. But I can't walk away from a five month old child who has been injured in that way. And that will be all for the day.

7. According to the PSI, the appellant and Kiana's mother, Diretha Jones, were not married at the time of the offense, but had "been together for approximately one year" and subsequently did get married. Jones was also indicted for capital murder, but the indictment against her was dismissed in 2003, "due to insufficient evidence"—again, according to the PSI. The trial court would later state on the record that the facts showed that the appellant and Diretha did not live together at the time of the offense. Our review of the appellate record, however, does not clearly indicate one way or the other whether, in fact, they were living together at that time, although the tenor of the appellant's statement, as summarized in the PSI, suggests not.

that "those are extraneous and the Court to even consider them in punishing has to believe beyond a reasonable doubt that they were done by [the appellant] and there is no evidence whatsoever before the Court on that." The prosecutor responded:

> I think that the Court needs to concentrate on the blunt force trauma suffered by the child and the resultant internal bleeding that he plead guilty to, recklessly causing that resulted in her death.

> I can't sit here and tell you that I can prove to you beyond a reasonable doubt any of those injuries were caused by him other than that he plead guilty to recklessly causing the blunt force trauma to her abdomen.

The trial court agreed "that the broken ribs to the child and ... the bruises that were several days old, there is absolutely no evidence here that would support a finding that [the appellant] had anything to do with that." The punishment hearing was then continued so that the parties could research another, unrelated legal issue. The PSI was never formally introduced into evidence, but it was included in the appellate record.

On September 17, 2004, the hearing reconvened, and the trial court heard argument from the parties. The appellant stressed his character witnesses. The State did not urge the trial court to consider the extraneous injuries. Nevertheless, the trial court stated:

> I can only conclude from what I have seen that this child was brutally murdered, brutally tortured. And, furthermore, I cannot believe, I cannot believe that if you take these facts, my wife and I having had three children and two grandchildren already, I cannot believe that—I find it unreasonable that anyone could believe that the people who—the mother and father of the child could not have known of these matters that I have discussed that are found in these medical records. And they are found in the autopsy—and there is no mention in the autopsy of the broken legs.[8] But that's the only conclusion I can reach in this case is that is why this little child died. And sure, she died from a perforated intestine and so we don't know all that went on. And we don't have—we don't have the facts and circumstances that are—that led up to this little girl's death. But I do believe that whatever went on, whatever happened to this little girl, I can only conclude that [the appellant] not only knew about it—he has admitted to striking the girl, but the injuries and damages that I see in the records don't—they don't come about by one blow. They don't come about by one striking. And they didn't all happen on November 19th when the baby died. I mean, when the baby was taken to the hospital.

---

8. Prior to hearing the arguments of the parties, the trial judge had announced on the record that he had reviewed "the source documents to the PSI," including certain medical records and the autopsy report, none of which was made a part of the record. The appellant objected that the trial court's consideration of these materials violated his right of confrontation under the Sixth Amendment, but did not reiterate this particular complaint on appeal. After the parties argued, and immediately before making the statement quoted in the text above, the trial judge observed that he had read about the victim's two broken legs in an offense report, but because he found no mention of them in the autopsy, "I don't really consider this in assessing whatever punishment in this case[.]" He made no such express assurance, however, with respect to the extraneous abdominal bruising or the fractured ribs.

With this, the trial judge announced that he intended to assess punishment at twenty years' incarceration, the maximum available for a second degree felony. He reset the proceedings for October 1, 2004, however, to "leave the door open . . . and if evidence could be produced that show my conclusions are wrong or *that someone else did that* then I would revisit the issue[.]"[9] When, on October 1st, no further evidence was presented, the trial court formally assessed the maximum punishment of a twenty year sentence and a $10,000 fine.

## On Appeal

The court of appeals began with the assumption that all extraneous offenses must be proven beyond a reasonable doubt before a trial court may take them into account in assessing punishment. From the trial court's announcement on September 17th, the court of appeals deduced that, notwithstanding its pronouncement on September 8th that there was "absolutely no evidence" to demonstrate that the appellant "had anything to do with" the extraneous injuries, the trial court had nevertheless taken into account in assessing the appellant's punishment that the appellant himself had committed those injuries, or that he was at least aware that *they were occurring and did nothing about them.* A majority of the court of appeals held that the evidence was insufficient to support the conclusion, beyond a reasonable doubt, that the appellant actually caused any of the extraneous injuries. The majority also concluded that the circumstantial evidence failed to support the inference, to a level of confidence beyond a reasonable doubt, that the appellant was

even aware that the injuries were taking place, such that he could be found criminally responsible for them.

Justice Yates dissented. She shared the majority's assumption that the State would have to establish the appellant's criminal responsibility beyond a reasonable doubt before the trial court could consider them. She disagreed with the majority's conclusion that the trial court took into consideration that the appellant actually caused Kiana's injuries, but agreed that it had considered the appellant's criminal responsibility for failing to do something about those injuries. But she believed that the evidence circumstantially showed he *must* have been aware of those injuries even if he did not commit them himself,[10] and that this inference was sufficiently strong that the trial court could have found it to be so to a level of confidence beyond a reasonable doubt. For this reason she did not regard the trial court's assessment of punishment to have been erroneously tainted by consideration of the extraneous offenses.

The SPA now challenges the assumption shared by both the majority and the dissenting opinions below. The SPA argues that a PSI need not establish beyond a reasonable doubt that an appellant was responsible for extraneous misconduct before a trial court is authorized to consider that misconduct in assessing punishment under Article 37.07, Section 3(d) of the Code of Criminal Procedure. We agree and hold that a PSI does not necessarily have to establish *beyond a reasonable doubt* that the defendant is responsible for extraneous misconduct before a court may

---

9. Emphasis added.

10. In her view, the appellant would have been guilty under these circumstances of the state jail felony of endangering a child under Section 22.041(c) of the Texas Penal Code. This provision makes it an offense to "intentional-

ly, knowingly, recklessly, or by criminal negligence, *by act or omission,* engage[ ] in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment."

consider it in assessing punishment. However, we also hold that the PSI must provide the trial court with *some* basis from which it can rationally infer that the defendant was responsible before using it to inform its normative judgment of what punishment to assess within the statutorily prescribed range.

## THE STATUTORY PROVISIONS

This case involves the convergence of two statutory provisions: 1) Article 37.07, Section 3(a)(1), which governs the "evidence" that "may be offered" at the punishment phase of a criminal case, whether the sentence assessor is judge or jury, and 2) Article 37.07, Section 3(d), which authorizes a trial court to "consider" the contents of the PSI as authorized in Article 42.12, Section 9(a) in assessing punishment, without apparent limitation.

### Article 37.07, Section 3(a)(1)

Before it was amended in 1989, Article 37.07, Section 3(a) permitted at a punishment hearing (before either judge or jury) only "the prior criminal record of the defendant, his general reputation and his character." The statute went on to define "prior criminal record" to mean "a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." This statutory language was construed generally to prohibit evidence of unadjudicated

extraneous offenses.[11] In 1989, the Legislature amended the statute to permit the introduction of "any matter the court deems relevant to sentencing, including" the defendant's prior criminal record.[12] This Court continued to hold that unadjudicated extraneous offenses were not allowed, however, even after this 1989 amendment.[13]

Consequently, in 1993 the Legislature amended the statute again. This time the Legislature expressly provided that, notwithstanding provisions in the Texas Rules of Evidence governing the admissibility of extraneous bad acts generally, a trial court may permit the introduction of "any other evidence of an extraneous crime or bad act[,]" regardless of whether it has resulted in a criminal conviction.[14] But this express authority of the trial court to admit evidence of any extraneous offense it deems relevant to sentencing is not unconditional. The extraneous offense must be "shown" by the proponent of the evidence (usually the State) "beyond a reasonable doubt ... to have been committed by the defendant," or that "he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." [15] Unless the extraneous misconduct evidence is such that the sentencing entity (either judge or jury) can rationally find the defendant criminally responsible for the extraneous misconduct, the trial court is not permitted to admit it at a punish-

---

11. *See Murphy v. State,* 777 S.W.2d 44, at 57, 61 (Tex.Crim.App.1989) (plurality opinion on State's motion for rehearing) (under then-extant Article 37.07, Section 3(a), "general rule" was that unadjudicated bad acts were inadmissible at punishment phase, and statute was never construed "to authorize character evidence in the form of specific misconduct, except, of course, inasmuch as that misconduct has become a part of the 'prior criminal record' of the accused").

12. *See* Acts 1989, 71st Leg., ch. 785, § 4.04, p. 3492, eff. Sept. 1, 1989.

13. *Grunsfeld v. State,* 843 S.W.2d 521, 526 (Tex.Crim.App.1992).

14. *See* Acts 1993, 73rd Leg., ch. 900, § 5.05, p. 3759, eff. Sept. 1, 1993.

15. *Id.*

ment hearing.[16] Moreover, once the evidence is admitted, the sentencing entity must actually find (and if it is a jury, it must be *instructed* it must find) the defendant criminally responsible to a level of confidence beyond a reasonable doubt before considering the extraneous misconduct evidence against him in assessing his punishment within the legislatively prescribed range.[17]

Thus, the Legislature simultaneously expanded the range of misconduct evidence the trial court is authorized to admit at a punishment hearing, while at the same time placing a conditional limitation upon any misconduct evidence that has not become a part of the defendant's prior criminal record. It seems unlikely that this conditional limitation reflects a legislative determination that extraneous misconduct evidence not shown to have been committed by the defendant beyond a reasonable doubt cannot reasonably be deemed *relevant* at the punishment phase of trial.[18] More likely the conditional limitation instead reflects a legislative policy judgment that evidence of extraneous misconduct not shown to have been committed by the defendant to this elevated level of confidence will invariably prove, though perhaps the trial court could reasonably deem it *rele-*

*vant,* nevertheless to be more prejudicial than probative in the assessment of his punishment—or at least frequently enough that a case-by-case balancing approach would not be worth the candle.[19]

### Articles 42.12, Section 9(a) and 37.07, Section 3(d)

Article 42.12, Section 9(a) defines what a PSI may contain, including, *inter alia,* "any other information relating to the defendant or the offense requested by the judge." Here, the trial court expressly asked that the community supervision officer include information from the victim's medical records, which may reasonably be regarded as "information relating to ... the offense." It was from these records that Hugo gleaned the information she included in the PSI about the extraneous injuries the victim suffered. In view of Article 37.07, Section 3(a)(1)'s conditional limitation upon the admission of extraneous misconduct evidence, should the trial court have satisfied itself that the appellant committed that misconduct beyond a reasonable doubt before "considering" it, as it was otherwise authorized to do under Article 37.07, Section 3(d), in assessing what punishment to assess?

**16.** *Mitchell v. State,* 931 S.W.2d 950, 953 (Tex.Crim.App.1996) (plurality opinion); *see also id.* at 956–57 (Meyers, J., concurring) (trial court should admit extraneous misconduct evidence under current Article 37.07, Section 3(a)(1) "upon condition that proof be adduced by the State sufficient to convince a rational juror beyond a reasonable doubt that appellant was actually responsible for the extraneous offense proven").

**17.** *Id.* at 954; *see also id.,* at 957 (Meyers, J., concurring).

**18.** For example, in the federal system, extraneous offense evidence offered at the guilt phase of trial, for some legitimate purpose other than its mere character-conformity val-

ue, may rationally be deemed "relevant" even if it is shown only by a preponderance of the evidence that the defendant committed it. *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

**19.** *Cf. Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App.1991) (opinion on rehearing on Court's own motion) (Rule 404(b) of the Texas Rules of Criminal Evidence reflects a policy decision by the rulemakers that evidence of extraneous misconduct at the guilt phase of trial having no relevance apart from inferences of character conformity is more prejudicial than probative *as. a matter of law,* and trial court has no discretion to rule otherwise).

Section 3(d) of Article 37.07 was added in 1981.[20] Prior to that time, this Court had vacillated somewhat with respect to the purpose of a PSI. The question was whether a trial court could consider a PSI only for purposes of deciding whether to impose probation, or it could also consider the PSI in making the broader determination of what punishment to assess within the statutory range.[21] We ultimately came down on the side of the former, holding that, at least before the 1981 amendment, the sole purpose of the PSI was to facilitate the probation decision.[22] Indeed, because the PSI was originally intended only to facilitate the probation decision, we were not troubled that it might contain what would be, at a formal punishment hearing, patently objectionable as rank hearsay [23] or evidence of an unadjudicated extraneous offense (such as a pending indictment [24] or an arrest record [25]). Presiding Judge Onion observed in a concurring opinion that "[w]hile many of these matters can be considered in passing upon the issue of probation, they would not be considered admissible on the issue of guilt or upon the issue of punishment." [26] He believed the latter to be true because Article 37.07, Section 3(a), as it then read, "does not permit the introduction of arrests not resulting in convictions, hearsay, etc." [27]

The 1981 amendment changed all that. For the first time the statute authorized the trial judge to order a PSI for the express purpose of informing his decision of what punishment to assess within the statutorily prescribed range. And the change led Judge Onion to observe, in a later concurring opinion, that the practice of ordering a PSI for punishment assessment had been "legitimized," and that otherwise-objectionable matters "may now be properly considered by the court using the pre-sentence report to determine punishment as well as the issue of probation." [28]

**20.** *See* Acts 1981, 67th Leg., ch. 639, § 1, p. 2466, eff. Sept. 1, 1981.

**21.** *Compare Angelle v. State,* 571 S.W.2d 301, 302 (Tex.Crim.App.1978) ("... whenever an issue of the proper punishment is present a presentence investigation and report may be utilized to assist the trial judge in the exercise of his discretion."), *with, e.g., McNeese v. State,* 468 S.W.2d 800, 801 (Tex.Crim.App. 1971) (trial court should "use the probation officer's report and take into consideration all of the pertinent information to more intelligently determine if the person convicted is entitled to probation"), *Valdez v. State,* 491 S.W.2d 415, 417 (Tex.Crim.App.1973) (same), *and Clay v. State,* 518 S.W.2d 550, 555 (Tex. Crim.App.1975) (same). *See also Mason v. State,* 604 S.W.2d 83, 84–90 (Tex.Crim.App. 1980) (Clinton, J., dissenting to denial of appellant's motion for rehearing) (describing conflicting case law and opining that *"Angelle* is *sui generis "* and should not be followed).

**22.** *Jackson v. State,* 680 S.W.2d 809, 814 (Tex. Crim.App.1984) (expressly adopting Judge Clinton's dissenting view in *Mason v. State,* and overruling *Angelle v. State, supra,* at least for purposes of cases "prior to the effective date of the 1981 amendment to Article 37.07, § 3(d)"). *See Whitelaw v. State,* 29 S.W.3d 129, 133 (Tex.Crim.App.2000).

**23.** *E.g., Brown v. State,* 478 S.W.2d 550, 551 (Tex.Crim.App.1972) ("To suggest that the judge should not use the information in the probation report because it contains 'hearsay statements' is to deny the obvious purpose of the statute."); *Lee v. State,* 505 S.W.2d 816, 818 (Tex.Crim.App.1974) ("[A] court is not required to disregard hearsay statements in a pre-sentencing report.").

**24.** *Clay v. State, supra.*

**25.** *McNeese v. State, supra; Valdez v. State, supra.*

**26.** *Nunez v. State,* 565 S.W.2d 536, 539–540 (Tex.Crim.App.1978) (Onion, P.J., concurring).

**27.** *Id.* at 540, n. 1.

**28.** *Tamminen v. State,* 653 S.W.2d 799, 807, n. 6 (Tex.Crim.App.1983) (Onion, P.J., concurring in part and dissenting in part).

All of this preceded the 1993 amendment to Article 37.07, Section 3(a)(1). The 1993 amendment clearly broadened "the categories of potentially admissible evidence at punishment." [29] But as to at least one of those new categories, namely, extraneous misconduct evidence, the amendment expressly added a condition: proof beyond a reasonable doubt. By conditioning the admissibility of extraneous misconduct evidence at a punishment hearing upon a showing that the defendant committed that misconduct beyond a reasonable doubt, did the Legislature also intend to narrow the scope of the "consideration" to which a trial judge can put extraneous misconduct evidence that appears in a PSI? If he finds that the PSI fails to establish the defendant's criminal responsibility for the extraneous misconduct to that high level of confidence, may he still consider it in assessing punishment, or must he instead restrict his consideration of the misconduct evidence to the question of whether community supervision should be imposed?

## ANALYSIS

■ The SPA argues that, consistent with our opinion in *Fryer v. State*,[30] we should hold that a trial court may consider extraneous misconduct that is not proven to have been committed by the defendant beyond a reasonable doubt in assessing punishment. We agree. In *Fryer*, the defendant objected to a portion of a PSI in which the victim expressed an opinion as to the appropriate punishment for the offense. On appeal he claimed, *inter alia*, that for the trial court to consider this information in the PSI would violate Rule 702 of the Texas Rules of Evidence, as well as statutory provisions governing victim impact statements.[31] We held that the rules of evidence do not control what may be included in a PSI (and, by implication, what a trial court may consider in a PSI).[32] As for the victim impact provisions, we held that, because the Legislature enacted them later in time than the 1981 amendment authorizing trial courts to consider PSIs in assessing punishment, "we find them to be inapposite in interpreting the meaning of the PSI statutes." [33] We similarly conclude that the 1993 amendment to Article 37.07, Section 3(a)(1), should not inform our construction of the 1981 amendment adding Article 37.07, Section 3(d).

Prior to the 1993 amendment to Section 3(a), we steadfastly construed it to prohibit evidence of unadjudicated extraneous misconduct at a formal punishment hearing.[34] We can find no case law between the 1981 addition of Section 3(d) and the 1993 amendment to Section 3(a) that authoritatively holds that unadjudicated extraneous misconduct, though still inadmissible at a punishment hearing, could nevertheless be taken into consideration by the trial court, not just in determining whether to grant

**29.** *Ellison v. State*, 201 S.W.3d 714, 722 (Tex. Crim.App.2006).

**30.** 68 S.W.3d 628 (Tex.Crim.App.2002).

**31.** *Id.* at 630.

**32.** *Id.* at 631, *citing Brown v. State, supra.* We also noted that "[o]ther cases have held that a PSI may contain—and a trial court may consider—evidence that could not have been introduced at the punishment stage of trial due to its subject matter, such as an arrest record or a pending indictment." The cases we cited in a footnote for this proposition, however, all pre-dated the 1981 amendment that added Article 37.07, Section 3(d). Therefore, they stand for no more than the proposition that information about an arrest record or a pending indictment in a PSI may be considered by the trial court in deciding the appropriateness of granting probation. *See* notes 24 & 25, *ante.*

**33.** *Id.* at 633.

**34.** *Grunsfeld v. State, supra.*

probation, but in assessing punishment generally. There is only the footnote in Presiding Judge Onion's concurring and dissenting opinion in which he assumes that "these matters may now be properly considered" by the trial court in assessing punishment.[35] Nevertheless, the Legislature could have been aware of Presiding Judge Onion's view when it amended Section 3(a) in 1993. The Legislature could have believed that, were the question to come squarely before us, we would likely construe Section 3(d) to allow the trial court to consider unadjudicated extraneous misconduct if it is contained in a PSI, even though he could not consider it if only offered into evidence at a formal punishment hearing under Section 3(a).[36]

For this reason we think that, had the Legislature intended to restrict the scope of what a trial court is authorized to consider in a PSI, it would have amended, not only Section 3(a) of Article 37.07, but Section 3(d) as well. In making extraneous misconduct evidence expressly admissible for the first time in a punishment hearing (albeit, only if it is shown that the accused was criminally responsible beyond a reasonable doubt), the Legislature clearly intended to *widen*, not narrow, the scope of what the sentencing entity may consider in assessing punishment.[37] The plain language of Section 3(d), on its face, continues to place no condition on the trial court in considering the contents of a PSI. Had the Legislature intended to place a condition where it likely perceived that none existed before, we do not think it would have amended only the provision that governs admissibility of evidence at a formal punishment hearing. The Legislature would also have amended the provision authorizing consideration of a PSI as well.[38] It would have expressly provided, in Section 3(d) itself, that a trial court's consideration of extraneous misconduct in a PSI is conditioned upon sufficient information in the PSI to show beyond a reasonable doubt that the defendant was criminally responsible for it.

We therefore hold that Section 3(a)(1) of Article 37.07 does not prohibit a trial court, as a sentencing entity, from considering extraneous misconduct evidence in assessing punishment just because the extraneous misconduct has not been shown to have been committed by the defendant beyond a reasonable doubt, if that extraneous misconduct is contained in a PSI. Several courts of appeals have already so held.[39] We think the court of appeals in this case, both majority and dissenting opinions, erred to assume otherwise.

## DISPOSITION

■ The United States Supreme Court has long recognized that due process does not require that a trial court must glean all relevant information from evidence presented in a formal courtroom proceeding in

---

35. *Tamminen v. State, supra.*

36. And indeed, in *Fryer* we later endorsed Presiding Judge Onion's view. 68 S.W.3d at 632.

37. *Ellison v. State, supra.*

38. The Legislature was not wholly unmindful of PSIs when it amended Article 37.07, Section 3(a), in 1993. By another section of the same enactment, it also made a conforming amendment to Article 37.07, Section 3(d). But the only change made to Section 3(d) was to amend its reference to Article 42.12, from former Subsection 4 to its current placement in Subsection 9. See Acts 1993, 73rd Leg., ch. 900, § 5.01, p. 3743, eff. Sept. 1, 1993.

39. *DuBose v. State*, 977 S.W.2d 877, 880 (Tex. App.-Beaumont 1998, no pet.); *Wilson v. State*, 108 S.W.3d 328, 332 (Tex.App.-Fort Worth 2003, pet. ref'd); *Bell v. State*, 155 S.W.3d 635, 638–39 (Tex.App.-Texarkana 2005, no pet.).

assessing punishment within the legislatively prescribed range.[40] This is not to say, of course, that a state's sentencing procedure is wholly "immune from scrutiny under the due-process clause."[41] We think it obvious that it would violate due process for a trial court to consider evidence of extraneous misconduct, even contained in a PSI, if there was no evidence from any source from which it could be rationally inferred that the defendant had any criminal responsibility for that extraneous misconduct. To the extent the record supports the conclusion here that the trial court took into consideration that the appellant actually *caused* Kiana's extraneous injuries, this would violate due process, since the record would not support that finding to *any* level of confidence. The majority and dissenting justices in the court of appeals disagreed on whether the record demonstrates that the trial judge really *did* incorporate the unsupported assumption that the appellant actually caused Kiana's broken ribs and extraneous abdominal injuries into his punishment-assessment calculus. We find the record, as summarized above, to be impossibly ambiguous with respect to that question.

We therefore affirm the judgment of the court of appeals, albeit for reasons entirely different than that court gave. The cause is remanded to the trial court for reassessment of punishment. In reassessing pun-

ishment, the trial court is free to consider any reasonably available inference deriving from the PSI that the appellant knew about and failed to respond to Kiana's extraneous injuries, regardless of whether the PSI establishes his knowledge to a level of confidence beyond a reasonable doubt.[42] But the trial court may *not* consider the appellant to have been criminally responsible for directly *causing* those extraneous injuries based upon what is currently in the PSI.[43]

KELLER, P.J., filed a dissenting opinion.

JOHNSON, J., filed a dissenting opinion.

KELLER, P.J., filed a dissenting opinion.

I agree that a trial court may consider extraneous offenses contained in a PSI even if the evidence does not establish beyond a reasonable doubt that the defendant committed the offenses. I also agree that the record must contain *some* basis for believing that the defendant committed the extraneous offenses. However, I disagree with the Court's conclusion that the record in this case contains *no* basis for concluding that appellant inflicted the extraneous injuries upon his child.

Appellant was one of the victim's caregivers, and he admitted (by pleading

**40.** *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *Tamminen v. State, supra,* at 802. *See also* George E. Dix & Robert O. Dawson, 43 Texas Practice: Criminal Practice and Procedure § 38.162 (2d ed.2001).

**41.** *Williams v. New York, supra,* at 252, n. 18, 69 S.Ct. 1079, *citing Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).

**42.** Of course, the appellant is also free on remand to comment on the PSI and, "with approval of the judge, [to] introduce testimo-

ny or other information alleging a factual inaccuracy in the investigation or report." Tex.Code Crim. Proc. art. 42.12, § 9(e).

**43.** Given this disposition, we need not address the SPA's second contention that the court of appeals majority erroneously concluded that only by engaging in impermissible inference stacking could they conclude that the PSI established that the appellant *knew* about Kiana's extraneous injuries beyond a reasonable doubt. *But see Hooper v. State,* 214 S.W.3d 9, 15–17 (Tex.Crim.App.2007).

guilty) that he struck his five-month-old daughter at least once, with enough force to kill her. As detailed by the trial court, the baby's injuries—some of which were already healing—included a hematoma on the brain, bruising front and back, three broken ribs, three tears in the anus, tears in the vagina, and two broken legs. The court concluded that it would be unreasonable to believe that appellant, as father of the child, would not have known of these injuries.

The fact that appellant caused the fatal injury gives rise to at least a character conformity inference that he also caused the other injuries suffered by the child during her short life. Although the law generally seeks to prohibit character conformity inferences at the *guilt* stage of trial, that prohibition is not grounded upon the idea that the inference lacks probative force, but on the idea that this strongly probative inference must be prohibited for policy reasons:

> The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance

tends to prevent confusion of issues, unfair surprise and undue prejudice.[1]

But those policy reasons do not apply to the punishment phase of trial, which focuses in large part upon the defendant's character,[2] and they would seem even less applicable in the PSI context, which contains even fewer constraints on the admissibility of evidence.

Consequently, I would reverse the judgment of the court of appeals and affirm the judgment of the trial court. Because the Court does not, I respectfully dissent.

JOHNSON, J., filed a dissenting opinion.

TEX.CODE CRIM. PROC. art. 37.07, § 3(a)(1) states that "[r]egardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to ... *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible,* regardless of whether he has previously been charged with or finally convicted of the crime or act." (Emphasis added.) TEX.CODE CRIM. PROC. art. 37.07, § 3(d) states that "[w]hen a judge assesses the punishment, he may order an investigative report as contemplated in Section 9 of Article 42.12 of this code and after considering the report, and *after the hearing of the evidence hereinabove provided for,* he shall forthwith announce his decision in open court as to the punishment to be assessed." (Emphasis added.) TEX.

---

1. *Old Chief v. United States,* 519 U.S. 172, 181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)(quoting *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948)).

2. *See* TEX.CODE CRIM. PROC., Art. 37.07, § 3(a)(1).

CODE CRIM. PROC. art. 42.12, § 9, speaks to circumstances of the charged offense, appropriate restitution, criminal and social history of the defendant, and any other information about the defendant or the charged offense that the judge requests. Nowhere does it say that the contents of the pre-sentence report are exempt from the established rules of evidence and admissibility.

By its plain language, Article 37.07, § 3(d), limits the evidence that a trial court may consider to "the evidence hereinabove provided for," that is, the evidence provided for in Article 37.07, § 3(a)(1)— "any matter the court deems relevant to sentencing, including but not limited to . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible. . . ." Allowing the trial court to consider the kind of evidence at issue here just because it is offered through a side door constitutes an end run around our established rules on admissibility and should not be permitted.

I respectfully dissent.