Opinion issued February 11, 2010 



 

 


 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00176-CR

____________


RAFAELA DAVILA, Appellant


v.


THE STATE OF TEXAS, Appellee






On Appeal from the 400th District Court

Fort Bend County, Texas

Trial Court Cause No. 44972







MEMORANDUM OPINION

 Appellant, Rafaela Davila, pleaded guilty to aggravated robbery, without an
agreed recommendation from the State. See Tex. Penal Code Ann. §§ 29.02, 29.03
(Vernon 2003). At appellant's request, the trial court ordered that a presentence
investigation (PSI) report be prepared. Following the PSI hearing, the trial court
assessed punishment at forty years' confinement.

 Appellant argues that the trial court erred in considering unadjudicated
extraneous offenses that were not proven beyond a reasonable doubt in assessing her
punishment. We affirm the judgment of the trial court.

Background


 Shortly before 9:00 p.m. on the night of June 12, 2006, appellant rang the
doorbell of a home belonging to Ki Hee Oh. Oh shared the home with her husband,
but at the time, she was home alone. As Mrs. Oh approached the glass front door, she
saw a Hispanic female, later determined to be appellant, standing alone outside the
door. Appellant appeared to be saying something but Oh could not hear her, so she
unlocked and opened the front door. As she opened the door, three men, who had
been hiding behind the wall, jumped out and grabbed Oh. One of the men pointed a
gun to Oh's neck, and the men carried her to her bedroom, where they bound her arms
and legs and covered her with a blanket. Oh could hear the intruders opening drawers
in her home. Finally, when she could no longer hear them in the home, she untied
herself. Oh discovered that the intruders stole laptops, a video camera, a digital
camera, and a safe that contained all of her jewelry and her family's citizenship
documents, social security cards, passports, and birth certificates. Oh estimated the
value of the stolen jewelry at around $100,000. Three pieces of jewelry (a ring, Oh's
wedding ring, and one earring) were found at a pawn shop, but at the time of trial, the
rest of her jewelry had not been recovered.

 After Oh identified her from a photo line up, a warrant was issued for
appellant's arrest. Appellant was arrested on July 18, 2006. When she was
interviewed shortly after her arrest by Detective Gillespie, appellant claimed she did
not have anything to do with the home invasion. Some time later appellant requested
to talk to a detective, claiming she could provide information on some Columbians
who were involved in robberies of homes in Fort Bend and Houston. Detective
Novosad spoke with appellant on approximately five occasions. Appellant
maintained that she knew nothing about the invasion of Oh's home and denied ever
being there. However, appellant claimed she had knowledge that would help
authorities identify the Columbians that were committing a large number of home
robberies going on in the area at the time. Appellant described a pattern of how the
home invasions occurred. She said that a few females were involved, and in each
invasion, a female would knock on the door, and then there would be three or four
men that would rush inside the house. Appellant was shown a book of approximately
50 pictures of suspects and was able to identify over half of them by their street
names. She also showed the detective locations where she claimed the Columbians
"hung out and lived," a pawnshop where jewelry from the home invasions was taken,
and the place where the stolen safes were taken to be cut open. The detectives were
already aware of all of the information provided by appellant except for the location
where the stolen safes were opened. At the time of trial, the detective testified that
none of the information appellant provided lead to prosecutions. 

 On November 13, 2007, appellant entered a plea of guilty to the offense of
aggravated robbery. At the time of the plea, the State offered two exhibits, which
were admitted into evidence without objection. State's Exhibit Two was the offense
report prepared by the Sugar Land Police Department. The exhibit included
information that the Police Department received from an informant implicating
appellant in several home invasions. The informant said appellant's role was to drive
the vehicle, knock on the door and then pawn stolen jewelry at pawnshops. The
exhibit also included pawn receipts and pictures of pieces of jewelry that appellant
attempted to sell at pawn shops.

 At the time of her plea, appellant was advised by the court that the range of
punishment for the offense was five to 99 years' or life imprisonment and a fine of
up to $10,000. Appellant acknowledged that she understood the range of punishment
prior to making her plea of guilty. At appellant's request, a PSI report was prepared
and the case was reset for a punishment hearing.

 On February 4, 2008, the punishment hearing was held. At the hearing, the
State called Mrs. Oh, who testified regarding the home invasion, and the State rested
its case in chief. The defense called appellant to the stand. Appellant testified that
the offense was committed by herself and a group of Columbians. She said that she
knew the Columbians were involved in many home invasions and knew that the men
were dangerous. Appellant testified that she was involved in two of the home
invasions, but later said, "Well, I wasn't there, but I knew of it." She testified that the
first time she participated with the Columbians was in the invasion of Oh's home. 
Regarding the invasion of Oh's home, appellant testified that she did not expect
anyone to be home. Despite Oh's testimony that appellant was inside the home with
the men, appellant claimed that "she never stepped foot inside her house."

 Appellant said that the jewelry that she pawned had "nothing to do with the
robbery" and all of it was given to her by her boyfriend, John Achito. She said that 
the other men who carried out the robbery of Oh told her that there was no jewelry
in the safe.

 Appellant said she became involved with the Columbians in 2001, after she
began dating one of them. Appellant admitted to being arrested in 2002 for
conspiracy to import and distribute heroin. She stated that she was on her way back
into the United States from Columbia and was traveling with two women who were
actually transporting the drugs. After being caught with the drugs, appellant agreed
to help law enforcement in exchange for a reduced sentence. Appellant served
eighteen months of a two year sentence in federal prison for the drug charge. Seven
or eight months after getting out of federal prison, appellant said she met the group
of Columbians that were involved in the home invasions.

 In rebuttal, the State called Detective Gillespie. Detective Gillespie testified
that appellant was identified as a suspect after an informant provided information and
Oh positively identified appellant from a photo lineup. The detective used a software
program that searches the inventory of pawnshops across the State to try to locate
some of Oh's stolen belongings. Detective Gillespie searched under appellant's name
and found that she had "pawned a ton of jewelry" recently. Appellant's name and
driver's license were on the pawn tickets for several items that were stolen from Oh's
home, including Oh's wedding ring and another ring that was in her safe. Detective
Gillespie testified that appellant told him she could provide him with the street names
of people involved in home invasions but denied having knowledge of the Oh
robbery. Detective Gillespie also testified that he was contacted six to eight times by
appellant's attorney who wanted the detectives to interview her in exchange for "a
better deal." Appellant's attorney finally told Detective Gillespie that appellant was
involved and wanted to come clean, but at that point, the detective did not speak with
her because he did not consider her to be reliable. Detective Gillespie testified that
the information appellant provided to the other detectives was not helpful. While he
acknowledged that appellant accurately identified approximately 30 Columbians
involved in the home invasions by their "nicknames," Detective Gillespie testified
that appellant's going through a book of people who were already identified as
suspects was not helpful to solving the home invasions.

 Also in rebuttal, the State called Adrian King, the probation officer who
prepared the PSI report on appellant. He testified that when he interviewed appellant,
there were a number of inconsistencies or misrepresentations in her statements. 
Specifically, she misrepresented her criminal record, claiming she had only been
arrested one time in her life, which was for conspiracy to import heroin. After
obtaining a copy of appellant's criminal record, he discovered that she was also
arrested for aiding and abetting illegal entry of an alien and for driving without a
license. In the interview with Officer King, appellant also claimed that she believed
no one would be at the Oh's home and she intended it to be "just a burglary of a
habitation." Officer King testified that he conducted a "risk/needs assessment" on
appellant, and she scored the highest possible score for reoffending.

 Following the closing argument by both parties, the court reaffirmed its finding
of guilt for aggravated robbery and also made a deadly weapon finding. Just prior to
announcing the sentence, the trial court stated:

This Court considers a home invasion of this type one of the most
serious crimes that can be committed against a civilized society, to have
someone burst into your home and place a gun to you. It's obvious to
me that this was, more likely than not, not the first time or the only time
that this occurred with this defendant, based on the amount of jewelry
that had been pawned and the information from the informant that was
testified to.

 The trial court announced that it assessed punishment at 40 years'
imprisonment. 

Analysis

 On appeal, appellant argues that the trial court erred by considering
unadjudicated extraneous offenses against the appellant in assessing punishment that
were not established beyond reasonable doubt, as required by Article 37.07, Section
3(a)(1) of the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann.
art. 37.07, § 3(a)(1) (Vernon Supp. 2009). Appellant argues that the comment by the
trial judge just prior to announcing the sentence shows that the "trial court clearly
considered extraneous offenses against the Appellant for which there was not proof
beyond a reasonable doubt."

 Appellant's argument is flawed because it assumes that all extraneous offenses
must be proved beyond a reasonable doubt before a trial court may take them into
account in assessing punishment. The Texas Court of Criminal Appeals has expressly
held to the contrary: "Section 3(a)(1) of Article 37.07 does not prohibit a trial court,
as a sentencing entity, from considering extraneous misconduct evidence in assessing
punishment just because the extraneous misconduct has not been shown to have been
committed by the defendant beyond a reasonable doubt, if that extraneous misconduct
is contained in a PSI." Smith v. State, 227 S.W.3d 753, 763 (Tex. Crim. App. 2007). 
The trial court, as the sentencing entity, may consider extraneous acts not proven
beyond a reasonable doubt, if the PSI provides some basis from which a trial court
may rationally infer that the defendant is responsible. Id. at 763-64 (holding that due
process is only limitation, requiring that there be evidence from some source from
which it can be rationally inferred that defendant had criminal responsibility for
extraneous misconduct). 

 Here, the testimony at the punishment hearing and the corresponding references
in the PSI support a rational inference that appellant had participated in other home
invasions. The PSI report included statements by the informant indicating that
appellant was involved in multiple home invasions. Additionally, the PSI report
included pawn tickets and pictures showing approximately thirteen pieces of jewelry
pawned by appellant at various pawnshops in the weeks following the Oh robbery. 
Included in the jewelry pawned by appellant were items that belonged to the Ohs. 
During the punishment hearing, appellant testified she was involved in two home
invasions, then changed her answer, explaining she was only involved in one but was
aware of another. Additionally, detectives who had interviewed appellant revealed
that she had extensive knowledge regarding the series of robberies committed in Fort
Bend and Houston. Appellant made no objection to the PSI or the evidence.

 From the evidence contained in the PSI report, it can be rationally inferred that
appellant was criminally responsible for the extraneous offenses. Accordingly, the
trial court was not prohibited from considering the information contained in the PSI
report in deciding punishment under Article 42.12, Section 9(a). See id. at 763-64;
see also Tex. Code Crim. Proc. Ann. art. 42.12, § 9(a) (Vernon Supp. 2009). 

 We overrule appellant's only issue on appeal.

Conclusion

 We affirm the judgment of the trial court.


 George C. Hanks, Jr.

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.

Do not publish. See Tex. R. App. P. 47.2(b).