**Affirmed and Majority Memorandum Opinion filed April 21, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00445-CR

---

**ROYLAND S. PRINGLE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1488306**

---

## MAJORITY MEMORANDUM OPINION

Convicted of aggravated sexual assault of an elderly or disabled person and sentenced to life imprisonment, appellant Royland S. Pringle complains on appeal that the trial court erred (1) in allowing the jury to hear evidence of an extraneous offense during the punishment phase of trial and (2) in failing to grant a mistrial. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A jury found appellant guilty of aggravated sexual assault of an elderly or disabled person, Cassey,[1] who was 68 years old and living at an assisted living facility at the time of the charged offense. During the punishment phase of trial, the State outlined its punishment-phase case, summarizing anticipated testimony from two other elderly patients at another local rehabilitation facility about sexual-assault complaints they had made against appellant.

The State first called retired police officer Keith McMurtry, who had served for more than 25 years with the Houston Police Department. McMurtry testified that in 2013, while working for the sex-crimes unit, he investigated a sexual assault of Rosemary, then a patient at Memorial City Health and Rehabilitation Center. According to McMurtry, Rosemary first referred to her attacker as "Roy," and "Roy" was the tentative suspect when McMurtry began working on the case. McMurtry explained that appellant worked at the facility, and he had identified him as a suspect. McMurtry later received another complaint made from another elderly patient, Joni, involving the "same location, the same suspect, and the same sort of sexual offense." In the course of his investigation, McMurtry spoke to both Rosemary and Joni as well as appellant. McMurtry testified that he placed both cases on "inactive" status while awaiting DNA testing results.

The State called Rosemary to testify. At some points during her testimony, she had difficulty communicating, which prompted the trial court to excuse the jury while the court assessed whether Rosemary was competent to testify. During the competency hearing, Rosemary testified, among other things, that a lie was good, truth was bad, and that appellant was not her attacker. The trial court

---

[1] We use pseudonyms to refer to the complainant and the other two elderly patients who testified during the punishment phase of trial.

declared Rosemary incompetent to testify and excused her.

Appellant then moved for a mistrial, asserting that there was no way to undo the harm of the jury having heard the State's opening statement, McMurtry's testimony, and then having seen Rosemary first appear on the witness stand and then disappear. Appellant's counsel belatedly asserted a blanket objection to "all references to [Rosemary] that have come about in this trial."[2] The trial court denied the motion for mistrial but resolved to give the jury a limiting instruction.

Appellant's counsel then objected "to any more testimony regarding [Rosemary] since her competency is in question now." Counsel added, "I think that calls into question any other statements, even statements purportedly made for the purpose of medical diagnosis or treatment." The State disagreed, explaining that it had planned to call Tiffany Dusang, the sexual assault nurse examiner (sometimes referred to as a "SANE nurse") who had performed the forensic examination on Rosemary. Before making a ruling, the trial court evaluated the admissibility of Dusang's testimony outside the presence of the jury.

On voir dire examination, Dusang testified that during her examination of Rosemary she noted that Rosemary suffered from mental retardation and expressive dysphasia. Dusang testified that she was able to communicate with Rosemary "in spite of those disabilities." According to Dusang, Rosemary told her that "a black man who works there at the hospital came into my room and put his ding-a-ling in me. And she pointed to her female genitalia." Dusang testified that consistent with that medical history, Dusang's physical evaluation of Rosemary revealed a "one centimeter acute tear at 6:00 o'clock on the labia minora." Dusang conceded she was not aware of the particular individual to whom Rosemary

---

[2] Appellant's counsel referred to his objection to McMurtry's statements as "after the fact".

3

referred or whether Rosemary was referring to appellant.

Appellant's counsel re-urged his objection to Dusang's testimony as not being relevant. Appellant's counsel argued Dusang's testimony lacked relevance because Dusang could not link the "exam or any results to any particular perpetrator." The trial court overruled appellant's objection to the admission of Dusang's testimony.

The next morning, before the jury arrived, appellant's counsel reurged his objection to Dusang's testimony, again asserting, among other grounds, that the testimony was irrelevant, stating:

> We have no identification by any witness. Now, McMurtry testified that there were allegations against my client, but he never showed a photo spread to [Rosemary], never got a name from her. He got the name from other people at the hospital. So, I mean, that's all secondhand.

The trial court took a recess to consider cases appellant's counsel had presented and the new and re-urged arguments. After the recess the trial court announced that it was making the same ruling and then permitted a "running objection to any further testimony about [Rosemary] and any testimony from the SANE nurse."

Dusang testified before the jury, giving essentially the same testimony she had given during the voir dire examination. After the trial court excused Dusang, the State called Joni. At the request of appellant's counsel, the trial court excused the jury to allow Joni to be seated and called the jury back after Joni was sitting in the witness stand. Joni was wearing a mask and gloves, which she explained were required due to an immune disorder. For reasons not explained in the record, Joni was not sworn in before the State commenced its questioning.

During her unsworn testimony Joni identified appellant as her attacker in

4

2013, while she was a patient at Memorial City Health and Rehab Center. Joni testified that appellant had been assigned as her certified nursing aid, responsible for taking care of her, and that he sexually assaulted her during her third encounter with him.

Before cross-examination, the trial court excused the jury for lunch. During that time, appellant's trial counsel asserted a second motion for mistrial:

> Appellant's Counsel: Judge, I'd like the record to reflect over the break we determined that this witness was not sworn, and I would like to object to that. Her testimony to the jury has not been under oath, and we're moving for a mistrial at this time on that basis.
>
> The Court: Motion for mistrial is denied.

Without further discussion Joni was sworn in as a witness and appellant's counsel began cross-examining her. Joni's testimony on cross-examination was consistent with her unsworn testimony. Joni identified appellant as her assigned nurse and testified that he vaginally sexually assaulted her with his penis. Joni also answered questions about the reasons for her delay in reporting the sexual assault.

At the close of the State's punishment-phase case, the trial court gave the jury the following limiting instruction on its consideration of the extraneous acts:

> All right. Ladies and gentlemen of the jury, please pay attention to what I am getting ready to read to you.
>
> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses.

The trial court also included the limiting instruction in the punishment-phase jury charge.

The jury assessed appellant's punishment at confinement for life. The trial

5

court sentenced appellant accordingly.

## II. ISSUES AND ANALYSIS

### A. Did the trial court reversibly err when it denied appellant's second motion for mistrial, following Joni's unsworn testimony?

In his first issue, appellant complains that the trial court reversibly erred when it denied his motion for mistrial immediately following his objection to Joni's unsworn testimony. We review the trial court's denial of a motion for mistrial using an abuse-of-discretion standard. *Webb v. State,* 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Veras v. State*, 410 S.W.3d 354, 357 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Under this standard, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Id.* As a reviewing court, we may not substitute our judgment for that of the trial court; instead, we determine whether the trial court's decision was arbitrary or unreasonable. *Id.* A trial court abuses its discretion when no reasonable view of the record could support the trial court's ruling. *See id.* When, as in this case, the party requesting a mistrial does not first seek a lesser remedy, we cannot reverse the trial court's judgment if the alleged error could have been cured by a less-drastic alternative. *Ocon v. State,* 284 S.W.3d 880, 884–87 (Tex. Crim. App. 2009).

Because appellant did not request any curative measure before moving for mistrial, to sustain appellant's first issue, we would have to conclude that the admission of Joni's unsworn testimony was incurable and left the trial court but one option, to declare a mistrial. *See id.* Texas Rule of Evidence 603 requires that a witness "give an oath or affirmation to testify truthfully" before testifying. Tex. R. Evid. 603. Courts have approved various ways of curing this irregularity. One approved means of curing a failure to have a witness sworn is through the trial

court's instruction to the jury to disregard the unsworn testimony. *See Beck v. State*, 719 S.W.2d at 214 (providing as an alternate to its finding of waiver, "[i]f it can be argued appellant made a timely objection to the failure to swear [the witness], then the error was cured by the jury 'instruction' not to consider."). Appellant did not request the trial court to give an instruction to disregard Joni's unsworn testimony. A second option for curing a failure to have a witness give an oath or affirmation is to permit the witness, under oath, to affirm her previous testimony given without an oath. *See Beck*, 719 S.W.2d at 213. Appellant never requested such a curative measure. A third option may be to allow the witness, under oath, to affirm her previous testimony and allow the attorneys to ask additional questions. *See Dennison v. United States*, 385 F.2d 905, 907 (5th Cir. 1967). Appellant did not request this option either. A fourth option may be to test the witness under oath away from the jury to determine which curative measures would be most appropriate. *See Butler v. State*, 890 S.W.2d 951, 956 (Tex. App.—Waco 1995, pet. ref'd) (finding instruction to disregard defendant's unsworn testimony admitting to prior convictions could not cure the error after steps outside the presence of the jury to investigate a cure yielded incurable questions of the veracity of the unsworn testimony; specifically, defendant testified under oath outside the presence of the jury that he would not have admitted to the prior conviction had an oath been taken, and he refused to testify again). Appellant did not request a hearing to assess whether a cure was feasible. Nor did appellant seek any other form of curative measure.

Because the unsworn testimony from Joni could have been cured by a less-drastic alternative, the trial court did not abuse its discretion in denying appellant's motion for mistrial immediately following his objection to Joni's unsworn testimony. *See Ocon*, 284 S.W.3d at 884–87; *Beck*, 719 S.W.2d at 214. We

7

overrule the first issue.

**B. Did the trial court reversibly err in allowing the jury to hear evidence related to an extraneous offense against Rosemary?**

In his second issue appellant asserts that the trial court abused its discretion in failing to perform its gatekeeping function during sentencing regarding the evidence of an extraneous offense against Rosemary.

Section 3(a) of article 37.07 of the Texas Code of Criminal Procedure allows the trial court to admit during the punishment phase evidence of any matter the court deems relevant to sentencing, including "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a). The trial court decides the threshold issue of admissibility and may not admit extraneous-offense evidence unless the evidence is such that a jury rationally could find beyond a reasonable doubt that the defendant committed the offense or could be held criminally responsible for the offense. *See Smith v. State*, 227 S.W.3d 753, 759 (Tex. Crim. App. 2007). We review this decision by the trial court for an abuse of discretion. *Thompson v. State*, 425 S.W.3d 480, 490 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Ultimately, the fact finder decides whether the extraneous offense was proven beyond a reasonable doubt. *See Palomo v. State*, 352 S.W.3d 87, 94 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Under his second issue, appellant asserts that after the trial court declared Rosemary incompetent to testify, the trial court overruled appellant's objection under section 3(a) of article 37.07 of the Texas Code of Criminal Procedure based on the lack of evidence to prove that appellant had sexually assaulted Rosemary.

We presume for the sake of argument that at this point in the punishment phase, the trial court overruled an objection by appellant that the trial court should not admit any evidence as to the alleged sexual assault of Rosemary because the evidence would not allow a jury rationally to find beyond a reasonable doubt that appellant committed the offense or could be held criminally responsible for the offense. *See Smith*, 227 S.W.3d at 759.

At this point in the punishment phase, the jury already had heard testimony from McMurtry that in 2013, while working for the sex-crimes unit, he investigated a sexual assault of Rosemary who, at the time, was a patient at Memorial City Health and Rehabilitation Center. According to McMurtry, Rosemary first referred to her attacker as "Roy." He explained that "Roy" had been identified as a suspect in Rosemary's case, and that McMurty later took on Joni's case because appellant had been identified as a suspect in Joni's case at the same location and involving the same type of offense. McMurtry stated that he traced appellant and identified him with employment records from Memorial City Health and Rehabilitation Center, and later interviewed Rosemary, Joni, and appellant in reference to the alleged offenses.

During her testimony outside the hearing of the jury, Dusang testified that Rosemary suffered from mental retardation and expressive dysphasia, and despite these disabilities, Dusang was able to communicate with Rosemary, and Rosemary told her about the incident. Dusang testified that her physical evaluation of Rosemary revealed injuries consistent with sexual assault.

Based on the evidence that the trial court had heard at the time of its ruling and under the applicable standard of review, we conclude that the trial court did not abuse its discretion in overruling appellant's objection and implicitly concluding that the evidence would allow a jury rationally to find beyond a

9

reasonable doubt that appellant committed the sexual assault of Rosemary. *See Smith*, 227 S.W.3d at 759; *Thompson*, 425 S.W.3d at 490–91 (concluding that the testimony of two arson investigators that the defendant had exclusive access to a house in which an intentional fire had been set would allow a jury rationally to find beyond a reasonable doubt that the defendant committed the extraneous arson offense); *Palomo*, 352 S.W.3d at 94–95 (concluding that the evidence would allow a jury rationally to find beyond a reasonable doubt that the defendant committed the extraneous arson murder offense). We overrule appellant's second issue.

Having overruled appellant's issues, we affirm the trial court's judgment.

/s/ Kem Thompson Frost
   Chief Justice

Panel consists of Chief Justice Frost and Justices Wise and Hassan. (Hassan, J., concurring without opinion.)

Do Not Publish — TEX. R. APP. P. 47.2(b).

10