# NO. 12-07-00035-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSHUA DELANEY,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Joshua Delaney appeals his sentence for aggravated robbery. In two issues, Appellant argues that the trial court erred in considering an unadjudicated extraneous offense in assessing his punishment, and in allowing evidence of the offense without providing the notice required by law. We reverse and remand.

### BACKGROUND

Appellant was indicted for aggravated robbery, a first degree felony.[1] The indictment also alleged that Appellant used and exhibited a deadly weapon. On February 23, 2004, Appellant entered a guilty plea. On the same date, Appellant and his counsel signed a waiver of jury, an agreement to stipulate testimony, an acknowledgment of admonishments, and a written stipulation of evidence in which Appellant swore that all allegations pleaded in the indictment were true and correct and

---

[1] *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2003). An individual adjudged guilty of a first degree felony shall be punished by imprisonment for life or for any term of not more than ninety-nine years or less than five years and, in addition, a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32 (Vernon 2003).

constituted the evidence in the case. Further, Appellant signed a waiver of motion for new trial and motion in arrest of judgment and a waiver of the right to appeal. This document was signed by the trial court on March 9, 2004 and filed in the record. On the same date, the trial court conducted a sentencing hearing, deferred further proceedings without entering an adjudication of guilt, and placed Appellant on deferred adjudication community supervision for ten years.

On December 3, 2004, the State filed an application to proceed to final adjudication, alleging that Appellant had violated the terms of his community supervision. Specifically, the State alleged that Appellant failed to perform community service restitution for the months of May through November of 2004, and failed to pay a $50.00 community supervision fee for the months of June through November of 2004. On December 15, 2004, Appellant entered pleas of "true" to both allegations. The trial court accepted Appellant's pleas of "true," found that Appellant violated his community service as alleged by the State, revoked his community supervision, proceeded to final adjudication, and found Appellant guilty as charged in the indictment. The trial court ordered an addendum to the presentence investigation and recessed the case in order to allow the State and Appellant to prepare evidence on punishment. On February 4 and 11, 2005, the trial court conducted a hearing to determine Appellant's punishment. At the conclusion of the hearing, the trial court assessed Appellant's punishment at life imprisonment and a $10,000.00 fine. After sentencing, Appellant requested that he be allowed to withdraw his waiver of the right to appeal. The trial court denied his request. Appellant then requested permission from the trial court to appeal his sentence. The trial court denied this request as well.

Appellant filed an application for a writ of habeas corpus with the court of criminal appeals. That court concluded that Appellant's waiver was not knowing and intelligent regarding the punishment phase of the trial and, thus, determined that Appellant had the right to appeal issues related to his sentence. This appeal followed.

### EXTRANEOUS OFFENSE

Appellant contends the trial court erred in considering the allegations of an unadjudicated extraneous offense in assessing his punishment.

## Standard of Review

Issues of admission or exclusion of evidence are reviewed under an abuse of discretion standard. ***Erdman v. State***, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993). An abuse of discretion occurs when a trial court applies an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. ***DuBose v. State***, 915 S.W.2d 493, 497-98 (Tex. Crim. App. 1996). The erroneous admission or exclusion of evidence is nonconstitutional error. *See, e.g.,* ***Solomon v. State***, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). It is not reversible error, however, unless it affects a substantial right of the defendant. TEX. R. APP. P. 44.2(b); ***Solomon***, 49 S.W.3d at 365. A substantial right is affected when the error has a substantial and injurious effect or influence in determining the verdict. ***Johnson v. State***, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). Conversely, a substantial right is not affected if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the verdict or had but a slight effect. ***Gray v. State***, 233 S.W.3d 295, 299 (Tex. Crim. App. 2007).

## Applicable Law

Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure provides, in part, that regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, and the circumstances of the offense for which he is being tried. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1)(Vernon Supp. 2007). Further, evidence may be offered as to any other evidence of an extraneous crime or bad act that is ***shown beyond a reasonable doubt*** by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. ***Id.*** (emphasis added).

The express authority of the trial court to admit evidence of any extraneous offense it deems relevant to sentencing is not unconditional. ***Smith v. State***, 227 S.W.3d 753, 759 (Tex. Crim. App. 2007). Unless the extraneous misconduct evidence is such that the sentencing entity (either judge or jury) can rationally find the defendant criminally responsible for the extraneous misconduct, the trial

3

court is not permitted to admit it at a punishment hearing. *Id.* at 759-60. Moreover, once the evidence is admitted, the sentencing entity must actually find the defendant criminally responsible to a level of confidence beyond a reasonable doubt before considering the extraneous misconduct evidence against him in assessing his punishment within the legislatively prescribed range. *Id.* at 760.

**Evidence of Extraneous Offense**

At the December 15, 2004 hearing, the trial court ordered an addendum to the presentence investigation and noted that "we all know that there's a two-ton elephant standing in this room that we're not talking about." The trial court stated that "[i]t's not a basis for revocation," but that Appellant is "under investigation for murder." Further, the trial court did not "want that two-ton elephant standing in this room when I'm sentencing him." Thus, the trial court recessed the case in order to allow the parties to supplement the presentence investigation, or PSI,[2] and to prepare evidence regarding punishment. Before the sentencing hearing on February 4 and 11, Appellant's attorney made an extensive objection to the trial court, urging that the State's purpose in offering evidence regarding the murder was an attempt to influence the court to impose a stiffer punishment. During the hearing, the State did not offer any evidence regarding the two allegations in its application to proceed to final adjudication. Instead, over strenuous and frequent objections from Appellant's attorney, the State adduced 248 pages of testimony and 37 exhibits regarding the murder investigation of Christina Claussen.

The record shows that Christina was married to Thomas "Tommy" Claussen, Jr. and lived with Tommy, Appellant, and Appellant's girlfriend in an apartment at the Citadel Apartments in Tyler, Texas. Shanin Claussen testified that she was married to Tommy's father, Thomas Claussen, Sr., and that Tommy was her stepson. She stated that Christina's two small children lived with the elder Claussens. On November 24, 2004, Shanin picked up Christina to go to the social security office and the bank. About 1:30 p.m., Shanin dropped Christina off at her apartment. Thomas testified that he picked up Tommy at his apartment at about 1:45 p.m. and saw Appellant in the apartment. After visiting a United States Army recruiter, Thomas dropped Tommy at his apartment at about 3:20 p.m. That night, Tommy called Thomas, told him that Christina had not returned home, and asked if anyone had seen her. The next day, both Tommy and Appellant ate Thanksgiving dinner with the

---

[2] Neither the PSI nor the addendum to the PSI is included in the appellate record.

4

elder Claussens. Sometime on Thanksgiving Day, Tommy reported to the Tyler Police Department that Christina was missing. Christina's body was found in a wooded area near the Citadel Apartments and a railroad track on December 4, 2004.

John Ragland, a detective with the major crimes unit of the Tyler Police Department, testified regarding the investigation into Christina's disappearance. Ragland stated that he interviewed Tommy and Appellant and searched their apartment by consent, collecting some items, including journals and/or diaries, greeting cards, and a hairbrush. During a search conducted pursuant to a search warrant, numerous books were seized, including books on witchcraft and martial arts. When asked how the seized items connected Appellant to Christina's murder, Ragland admitted that "[a]t this time I don't know of any piece of evidence that would link [Appellant] to the homicide." Appellant's attorney questioned Ragland about how evidence depicted in photographs of the apartment admitted into evidence connected Appellant to Christina's homicide. In each case, Ragland admitted that he did not know that it did. Ragland also admitted that, at one time, Tommy was a suspect in Christina's murder, but that he was no longer a suspect. According to Ragland, Christina's cause of death was asphyxiation by manual strangulation. He said he was aware that a complaint had previously been filed against Tommy for strangling one of his stepmother's children.

Chuck Barber, a detective and investigator with the major crimes unit of the Tyler Police Department, testified that after Christina's body was found, he interviewed Appellant at the police department for over an hour. The videotape of Barber's interview with Appellant was admitted into evidence. According to Barber, surveillance videotapes from a store disproved parts of Appellant's statement regarding his activities on the day of Christina's disappearance. When asked if there was "any physical evidence that you know of which today connects" Appellant with Christina's murder, Barber said "not that I'm aware of."

Richard Cashell, a detective and criminal intelligence officer with the major crimes unit of the Tyler Police Department, testified that he reviewed surveillance videotapes from a store that Appellant said he visited on the day of Christina's disappearance. According to Cashell, he did not see Appellant enter the store. Destry Walsworth, a sergeant assigned to the major crimes unit of the Tyler Police Department, testified that he and Barber interviewed Appellant at the police station after Christina's body was discovered. Walsworth stated that Appellant denied having a sexual relationship

5

with Christina. However, when Appellant was confronted with deoxyribonucleic acid (DNA) testing, he informed Walsworth that he had sex with Christina the day before her disappearance. According to Walsworth, based on the totality of the circumstances surrounding the case, he believed that Appellant killed Christina. Walsworth stated that Appellant had lied about a number of things. Walsworth also testified that he believed Appellant lied about the entire situation and that he was involved in Christina's murder.

Tommy J. Brown, a forensic pathologist who conducted Christina's autopsy, testified that Christina died from asphyxia due to external compression of her neck. Brown surmised that some type of external force was used, and that most likely a forearm, hammerlock, or "sleeper hold from the anticubital space" was applied to her neck. He also stated that Christina had a ligature mark around her neck. Brown identified and testified regarding six photographs of Christina's autopsy. These photographs were admitted over Appellant's objections. Brown testified that Christina's strangulation was consistent with a hammerlock from behind her, and was not necessarily consistent with a judo expert using pressure points. Four additional witnesses testified, including Appellant's former girlfriend.

At the conclusion of the sentencing hearing, Appellant's attorney stressed that the State had not met its burden of proving beyond a reasonable doubt that Appellant was guilty of the extraneous offense, Christina's murder, as required pursuant to article 37.07, section 3(a)(1). The State's closing argument primarily concerned Christina's murder. The State opined that Appellant proved himself to be "evil" and for being "somebody who [was] capable and [would] carry out a violent murder with his bare hands, strangling the life out of Christiana Claussen and her unborn child." The State requested that the trial court sentence Appellant to life imprisonment. In its sentencing, the trial court did not find that the extraneous offense had been proven beyond a reasonable doubt.

## Analysis

As explained above, the state may offer evidence of an extraneous crime or bad act during a punishment hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). However, the extraneous offense must be established beyond a reasonable doubt. *See id.* The trial court allowed the State to present eleven witnesses, including four police officers and a pathologist, to testify about the investigation into Christina's disappearance and murder, and her autopsy. The State's evidence

6

consumed 248 pages of the record. Thirty-seven exhibits regarding Christina's murder investigation were introduced, including numerous photographs taken during the autopsy of her decomposing body. All of the investigating detectives agreed that there was no evidence to affirmatively connect Appellant with Christina's murder. Only Walsworth testified that, in his opinion, Appellant murdered Christina. However, Walsworth's opinion was not based on any evidence or fact, but instead was based, at least in part, on the fact that Appellant lied about having sex with Christina. Unfounded speculation by Walsworth does not constitute evidence that Appellant committed Christina's murder beyond a reasonable doubt as required by article 37.07, section 3(a)(1).

Finally, the State's closing argument regarding Appellant's underlying crime of aggravated robbery comprised two pages of the reporter's record. The State's argument regarding Appellant's involvement in Christina's murder comprised slightly over three pages and included the statement that "if you consider the fact that he killed Christina Claussen on November 24, 2004, as she had that baby growing inside of her, life is the only appropriate sentence in this case." But in its argument, the State did not point to any evidence that affirmatively connected Appellant with Christina's murder.

Significantly, but appropriately, the trial court did not find that Appellant was involved with Christina's murder beyond a reasonable doubt. Without this finding, the trial court abused its discretion in admitting testimony and evidence regarding the extraneous offense, Christina's murder. *See Smith*, 227 S.W.3d at 759-60. However, we must disregard this error unless it had a substantial and injurious effect or influence on the trial court's determination of Appellant's punishment. *See Johnson*, 43 S.W.3d at 4.

In its application to proceed to final adjudication, the State alleged that Appellant had violated the terms of his community supervision by failing to perform community service restitution for the months of May through November of 2004 and by failing to pay a $50.00 community supervision fee for the months of June through November of 2004. Appellant pleaded true to both allegations. The State did not allege that Appellant had engaged in further criminal activity during his community supervision and the trial court recognized that the ongoing murder investigation was not a ground for revocation. Yet, after two days of hearings, the testimony of eleven witnesses, and the presentation of thirty-seven exhibits, Appellant, who had originally received deferred adjudication community supervision, was sentenced to life imprisonment. At closing argument, the State urged that, in order

to assess a just punishment, the trial court should consider not just what Appellant did to "get on probation, but . . . what he's done after he was placed on probation." The State then argued that the evidence showed beyond a reasonable doubt that Appellant murdered Christina, and informed the trial court that Appellant had shown himself to be "evil," not only because he committed the aggravated robbery but "he is somebody who is capable and will carry out a violent murder with his bare hands . . . ." The State concluded its argument with a request that the trial court sentence Appellant to life imprisonment.

In conclusion, we have reviewed the whole record, which shows that (1) the evidence presented at the sentencing hearing related solely to Christina's murder, (2) the State strongly emphasized the evidence in its closing argument and requested that Appellant be assessed the maximum sentence of life imprisonment, and (3) the trial court assessed the maximum sentence after having originally assessed deferred adjudication community supervision. Based upon this record, we do not have fair assurance that the erroneous admission of the evidence relating to Christina's murder did not influence the trial court in its assessment of punishment or had but a slight effect. *See Gray,* 233 S.W.3d at 299. Therefore, we must conclude that the admission of such evidence affected a substantial right of Appellant. *See id.* Accordingly, we sustain Appellant's first issue.

### NOTICE OF EXTRANEOUS OFFENSE

In his second issue, Appellant complains that the trial court erred in allowing evidence of the extraneous offense because no notice of the State's intent to introduce such evidence was provided as required by article 37.07, section 3(g) of the Texas Code of Criminal Procedure. Having sustained Appellant's first issue, we need not consider Appellant's second issue. *See* TEX. R. APP. P. 47.1.

### DISPOSITION

Having sustained Appellant's first issue, we *reverse* and *remand* this case for a new sentencing hearing.

SAM GRIFFITH
Justice

Opinion delivered June 30, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*
(DO NOT PUBLISH)

8