NO. 12-07-00035-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JOSHUA DELANEY,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Joshua Delaney appeals his sentence for aggravated robbery. In two issues, Appellant argues
that the trial court erred in considering an unadjudicated extraneous offense in assessing his
punishment, and in allowing evidence of the offense without providing the notice required by law. 
We reverse and remand.


Background

 Appellant was indicted for aggravated robbery, a first degree felony. (1) The indictment also
alleged that Appellant used and exhibited a deadly weapon. On February 23, 2004, Appellant entered
a guilty plea. On the same date, Appellant and his counsel signed a waiver of jury, an agreement to
stipulate testimony, an acknowledgment of admonishments, and a written stipulation of evidence in
which Appellant swore that all allegations pleaded in the indictment were true and correct and
constituted the evidence in the case. Further, Appellant signed a waiver of motion for new trial and
motion in arrest of judgment and a waiver of the right to appeal. This document was signed by the
trial court on March 9, 2004 and filed in the record. On the same date, the trial court conducted a
sentencing hearing, deferred further proceedings without entering an adjudication of guilt, and placed
Appellant on deferred adjudication community supervision for ten years.

 On December 3, 2004, the State filed an application to proceed to final adjudication, alleging
that Appellant had violated the terms of his community supervision. Specifically, the State alleged
that Appellant failed to perform community service restitution for the months of May through
November of 2004, and failed to pay a $50.00 community supervision fee for the months of June
through November of 2004. On December 15, 2004, Appellant entered pleas of "true" to both
allegations. The trial court accepted Appellant's pleas of "true," found that Appellant violated his
community service as alleged by the State, revoked his community supervision, proceeded to final
adjudication, and found Appellant guilty as charged in the indictment. The trial court ordered an
addendum to the presentence investigation and recessed the case in order to allow the State and
Appellant to prepare evidence on punishment. On February 4 and 11, 2005, the trial court conducted
a hearing to determine Appellant's punishment. At the conclusion of the hearing, the trial court
assessed Appellant's punishment at life imprisonment and a $10,000.00 fine. After sentencing,
Appellant requested that he be allowed to withdraw his waiver of the right to appeal. The trial court
denied his request. Appellant then requested permission from the trial court to appeal his sentence. 
The trial court denied this request as well.

 Appellant filed an application for a writ of habeas corpus with the court of criminal appeals.
That court concluded that Appellant's waiver was not knowing and intelligent regarding the
punishment phase of the trial and, thus, determined that Appellant had the right to appeal issues
related to his sentence. This appeal followed.


Extraneous Offense

 Appellant contends the trial court erred in considering the allegations of an unadjudicated
extraneous offense in assessing his punishment.


Standard of Review

 Issues of admission or exclusion of evidence are reviewed under an abuse of discretion
standard. Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993). An abuse of discretion
occurs when a trial court applies an erroneous legal standard, or when no reasonable view of the
record could support the trial court's conclusion under the correct law and the facts viewed in the light
most favorable to its legal conclusion. DuBose v. State, 915 S.W.2d 493, 497-98 (Tex. Crim. App.
1996). The erroneous admission or exclusion of evidence is nonconstitutional error. See, e.g.,
Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). It is not reversible error, however,
unless it affects a substantial right of the defendant. Tex. R. App. P. 44.2(b); Solomon, 49 S.W.3d
at 365. A substantial right is affected when the error has a substantial and injurious effect or influence
in determining the verdict. Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). Conversely,
a substantial right is not affected if the appellate court, after examining the record as a whole, has fair
assurance that the error did not influence the verdict or had but a slight effect. Gray v. State, 233
S.W.3d 295, 299 (Tex. Crim. App. 2007).

Applicable Law

 Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure provides, in part, that 

regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may
be offered by the state and the defendant as to any matter the court deems relevant to sentencing,
including but not limited to the prior criminal record of the defendant, his general reputation, his
character, an opinion regarding his character, and the circumstances of the offense for which he is
being tried. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)(Vernon Supp. 2007). Further,
evidence may be offered as to any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the defendant or for which he
could be held criminally responsible, regardless of whether he has previously been charged with or
finally convicted of the crime or act. Id. (emphasis added). 

 The express authority of the trial court to admit evidence of any extraneous offense it deems
relevant to sentencing is not unconditional. Smith v. State, 227 S.W.3d 753, 759 (Tex. Crim. App.
2007). Unless the extraneous misconduct evidence is such that the sentencing entity (either judge or
jury) can rationally find the defendant criminally responsible for the extraneous misconduct, the trial
court is not permitted to admit it at a punishment hearing. Id. at 759-60. Moreover, once the evidence
is admitted, the sentencing entity must actually find the defendant criminally responsible to a level
of confidence beyond a reasonable doubt before considering the extraneous misconduct evidence
against him in assessing his punishment within the legislatively prescribed range. Id. at 760.

Evidence of Extraneous Offense

 At the December 15, 2004 hearing, the trial court ordered an addendum to the presentence
investigation and noted that "we all know that there's a two-ton elephant standing in this room that
we're not talking about." The trial court stated that "[i]t's not a basis for revocation," but that
Appellant is "under investigation for murder." Further, the trial court did not "want that two-ton
elephant standing in this room when I'm sentencing him." Thus, the trial court recessed the case in
order to allow the parties to supplement the presentence investigation, or PSI, (2) and to prepare evidence
regarding punishment. Before the sentencing hearing on February 4 and 11, Appellant's attorney
made an extensive objection to the trial court, urging that the State's purpose in offering evidence
regarding the murder was an attempt to influence the court to impose a stiffer punishment. During
the hearing, the State did not offer any evidence regarding the two allegations in its application to
proceed to final adjudication. Instead, over strenuous and frequent objections from Appellant's
attorney, the State adduced 248 pages of testimony and 37 exhibits regarding the murder investigation
of Christina Claussen. 

 The record shows that Christina was married to Thomas "Tommy" Claussen, Jr. and lived with
Tommy, Appellant, and Appellant's girlfriend in an apartment at the Citadel Apartments in Tyler,
Texas. Shanin Claussen testified that she was married to Tommy's father, Thomas Claussen, Sr., and
that Tommy was her stepson. She stated that Christina's two small children lived with the elder
Claussens. On November 24, 2004, Shanin picked up Christina to go to the social security office and
the bank. About 1:30 p.m., Shanin dropped Christina off at her apartment. Thomas testified that he
picked up Tommy at his apartment at about 1:45 p.m. and saw Appellant in the apartment. After
visiting a United States Army recruiter, Thomas dropped Tommy at his apartment at about 3:20 p.m. 
That night, Tommy called Thomas, told him that Christina had not returned home, and asked if
anyone had seen her. The next day, both Tommy and Appellant ate Thanksgiving dinner with the
elder Claussens. Sometime on Thanksgiving Day, Tommy reported to the Tyler Police Department
that Christina was missing. Christina's body was found in a wooded area near the Citadel Apartments
and a railroad track on December 4, 2004. 

 John Ragland, a detective with the major crimes unit of the Tyler Police Department, testified
regarding the investigation into Christina's disappearance. Ragland stated that he interviewed Tommy
and Appellant and searched their apartment by consent, collecting some items, including journals
and/or diaries, greeting cards, and a hairbrush. During a search conducted pursuant to a search
warrant, numerous books were seized, including books on witchcraft and martial arts. When asked
how the seized items connected Appellant to Christina's murder, Ragland admitted that "[a]t this time
I don't know of any piece of evidence that would link [Appellant] to the homicide." Appellant's
attorney questioned Ragland about how evidence depicted in photographs of the apartment admitted
into evidence connected Appellant to Christina's homicide. In each case, Ragland admitted that he
did not know that it did. Ragland also admitted that, at one time, Tommy was a suspect in Christina's
murder, but that he was no longer a suspect. According to Ragland, Christina's cause of death was
asphyxiation by manual strangulation. He said he was aware that a complaint had previously been
filed against Tommy for strangling one of his stepmother's children.

 Chuck Barber, a detective and investigator with the major crimes unit of the Tyler Police
Department, testified that after Christina's body was found, he interviewed Appellant at the police
department for over an hour. The videotape of Barber's interview with Appellant was admitted into
evidence. According to Barber, surveillance videotapes from a store disproved parts of Appellant's
statement regarding his activities on the day of Christina's disappearance. When asked if there was
"any physical evidence that you know of which today connects" Appellant with Christina's murder,
Barber said "not that I'm aware of." 

 Richard Cashell, a detective and criminal intelligence officer with the major crimes unit of the
Tyler Police Department, testified that he reviewed surveillance videotapes from a store that Appellant
said he visited on the day of Christina's disappearance. According to Cashell, he did not see
Appellant enter the store. Destry Walsworth, a sergeant assigned to the major crimes unit of the Tyler
Police Department, testified that he and Barber interviewed Appellant at the police station after
Christina's body was discovered. Walsworth stated that Appellant denied having a sexual relationship
with Christina. However, when Appellant was confronted with deoxyribonucleic acid (DNA) testing,
he informed Walsworth that he had sex with Christina the day before her disappearance. According
to Walsworth, based on the totality of the circumstances surrounding the case, he believed that
Appellant killed Christina. Walsworth stated that Appellant had lied about a number of things. 
Walsworth also testified that he believed Appellant lied about the entire situation and that he was
involved in Christina's murder.

 Tommy J. Brown, a forensic pathologist who conducted Christina's autopsy, testified that
Christina died from asphyxia due to external compression of her neck. Brown surmised that some
type of external force was used, and that most likely a forearm, hammerlock, or "sleeper hold from
the anticubital space" was applied to her neck. He also stated that Christina had a ligature mark
around her neck. Brown identified and testified regarding six photographs of Christina's autopsy. 
These photographs were admitted over Appellant's objections. Brown testified that Christina's
strangulation was consistent with a hammerlock from behind her, and was not necessarily consistent
with a judo expert using pressure points. Four additional witnesses testified, including Appellant's
former girlfriend.

 At the conclusion of the sentencing hearing, Appellant's attorney stressed that the State had
not met its burden of proving beyond a reasonable doubt that Appellant was guilty of the extraneous
offense, Christina's murder, as required pursuant to article 37.07, section 3(a)(1). The State's closing
argument primarily concerned Christina's murder. The State opined that Appellant proved himself
to be "evil" and for being "somebody who [was] capable and [would] carry out a violent murder with
his bare hands, strangling the life out of Christiana Claussen and her unborn child." The State
requested that the trial court sentence Appellant to life imprisonment. In its sentencing, the trial court
did not find that the extraneous offense had been proven beyond a reasonable doubt. 

Analysis

 As explained above, the state may offer evidence of an extraneous crime or bad act during a
punishment hearing. See Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1). However, the extraneous
offense must be established beyond a reasonable doubt. See id. The trial court allowed the State to
present eleven witnesses, including four police officers and a pathologist, to testify about the
investigation into Christina's disappearance and murder, and her autopsy. The State's evidence
consumed 248 pages of the record. Thirty-seven exhibits regarding Christina's murder investigation
were introduced, including numerous photographs taken during the autopsy of her decomposing body. 
All of the investigating detectives agreed that there was no evidence to affirmatively connect
Appellant with Christina's murder. Only Walsworth testified that, in his opinion, Appellant murdered
Christina. However, Walsworth's opinion was not based on any evidence or fact, but instead was
based, at least in part, on the fact that Appellant lied about having sex with Christina. Unfounded
speculation by Walsworth does not constitute evidence that Appellant committed Christina's murder
beyond a reasonable doubt as required by article 37.07, section 3(a)(1).

 Finally, the State's closing argument regarding Appellant's underlying crime of aggravated
robbery comprised two pages of the reporter's record. The State's argument regarding Appellant's
involvement in Christina's murder comprised slightly over three pages and included the statement that
"if you consider the fact that he killed Christina Claussen on November 24, 2004, as she had that baby
growing inside of her, life is the only appropriate sentence in this case." But in its argument, the State
did not point to any evidence that affirmatively connected Appellant with Christina's murder.

 Significantly, but appropriately, the trial court did not find that Appellant was involved with
Christina's murder beyond a reasonable doubt. Without this finding, the trial court abused its
discretion in admitting testimony and evidence regarding the extraneous offense, Christina's murder.
See Smith, 227 S.W.3d at 759-60. However, we must disregard this error unless it had a substantial
and injurious effect or influence on the trial court's determination of Appellant's punishment. See
Johnson, 43 S.W.3d at 4. 

 In its application to proceed to final adjudication, the State alleged that Appellant had violated
the terms of his community supervision by failing to perform community service restitution for the
months of May through November of 2004 and by failing to pay a $50.00 community supervision fee
for the months of June through November of 2004. Appellant pleaded true to both allegations. The
State did not allege that Appellant had engaged in further criminal activity during his community
supervision and the trial court recognized that the ongoing murder investigation was not a ground for
revocation. Yet, after two days of hearings, the testimony of eleven witnesses, and the presentation
of thirty-seven exhibits, Appellant, who had originally received deferred adjudication community
supervision, was sentenced to life imprisonment. At closing argument, the State urged that, in order
to assess a just punishment, the trial court should consider not just what Appellant did to "get on
probation, but . . . what he's done after he was placed on probation." The State then argued that the
evidence showed beyond a reasonable doubt that Appellant murdered Christina, and informed the trial
court that Appellant had shown himself to be "evil," not only because he committed the aggravated
robbery but "he is somebody who is capable and will carry out a violent murder with his bare hands
. . . ." The State concluded its argument with a request that the trial court sentence Appellant to life
imprisonment. 

 In conclusion, we have reviewed the whole record, which shows that (1) the evidence
presented at the sentencing hearing related solely to Christina's murder, (2) the State strongly
emphasized the evidence in its closing argument and requested that Appellant be assessed the
maximum sentence of life imprisonment, and (3) the trial court assessed the maximum sentence after
having originally assessed deferred adjudication community supervision. Based upon this record, 
we do not have fair assurance that the erroneous admission of the evidence relating to Christina's
murder did not influence the trial court in its assessment of punishment or had but a slight effect. See
Gray, 233 S.W.3d at 299. Therefore, we must conclude that the admission of such evidence affected
a substantial right of Appellant. See id. Accordingly, we sustain Appellant's first issue. 


Notice of Extraneous Offense

 In his second issue, Appellant complains that the trial court erred in allowing evidence of the
extraneous offense because no notice of the State's intent to introduce such evidence was provided
as required by article 37.07, section 3(g) of the Texas Code of Criminal Procedure. Having sustained
Appellant's first issue, we need not consider Appellant's second issue. See Tex. R. App. P. 47.1.


Disposition

 Having sustained Appellant's first issue, we reverse and remand this case for a new
sentencing hearing.

 SAM GRIFFITH 

 Justice

Opinion delivered June 30, 2008.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

(DO NOT PUBLISH)
1. See Tex. Penal Code Ann. § 29.03 (Vernon 2003). An individual adjudged guilty of a first degree
felony shall be punished by imprisonment for life or for any term of not more than ninety-nine years or less than five
years and, in addition, a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.32 (Vernon 2003).
2. Neither the PSI nor the addendum to the PSI is included in the appellate record.