**Opinion issued June 26, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00470-CR, 01-13-00471-CR, 01-13-00472-CR

————————————

## JOSEPH JOHN AKBARI, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 180th District Court
### Harris County, Texas
### Trial Court Case No. 1349829, 1349830, 1349831

---

## MEMORANDUM OPINION

Appellant, Joseph Akbari, pleaded guilty to three counts of aggravated robbery with a deadly weapon without an agreed recommendation as to

punishment.[1]  Following the preparation of a pre-sentence investigation report ("PSI") and hearing, the trial court assessed his punishment at twenty-five years' confinement for each count, with the sentences to run concurrently.  In his sole issue on appeal, appellant argues that he received ineffective assistance of counsel.

We affirm.

## Background

Appellant pleaded guilty to three counts of aggravated robbery with a deadly weapon.  The first robbery occurred on April 28, 2012, when appellant robbed a woman of her vehicle at gunpoint.  The second and third robberies occurred on May 17, 2012, and June 1, 2012, respectively, when appellant robbed two different Cricket Wireless stores at gunpoint.  After accepting appellant's guilty plea, the trial court ordered the preparation of a PSI.

The PSI identified appellant as a twenty-two-year-old Hispanic male, and it identified his co-defendant as Darius Williams.[2]  The PSI provided that appellant had obtained a high school diploma and had briefly attended community college.  Appellant also had a brief employment history.

---

[1]     *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).

[2]     Williams admitted to and was charged with one count of aggravated robbery relating to the June 1, 2012 robbery of a Cricket Wireless store.  The case against Williams was still pending at the time appellant was sentenced.

The PSI also recounted events relating to the charges against appellant. According to the PSI, Sha'De Jones reported the aggravated robbery of her black Kia SUV at approximately 6:46 p.m. on April 28, 2012. She informed police that the robber was a Hispanic male, armed with a gun, who approached her car and told her that he needed her vehicle "to go do something." During the April 28, 2012 Cricket store robbery, surveillance cameras recorded two men wearing ski masks, one Hispanic male and one black male, leaving in a vehicle matching the description of Jones's stolen SUV. This led officers to suspect that the robbery of Jones's SUV and the robbery of the Cricket store were related.

Sha'De Jones's father, Roderick Jones, arrived to check on his daughter after she told him she had been robbed. Roderick Jones drove around the area and located his daughter's SUV. He observed a Hispanic male and two black males near his daughter's SUV. Jones told police that the Hispanic male drove the SUV to an apartment complex where he abandoned it, and police later found the vehicle. Inside Jones's vehicle, officers recovered a purse that had been stolen during the robbery of the Cricket store earlier that same day. The apartment manager of the complex where Jones's SUV was recovered thought that the Hispanic male described by Jones and her father might be "Joe," who was a friend of one of the apartment complex residents, who went by the name "D-Will."

Police observed appellant and his co-defendant, Darius Williams, getting into a white Toyota Venza in the parking lot of the apartment complex where Jones's SUV was recovered. Police detained and identified appellant and Williams as suspects, but they were subsequently released. Appellant pleaded guilty to the robbery of Sha'De Jones, but he was not charged with the April 28, 2012 Cricket store robbery.

On May 3, 2012, another Cricket store was robbed at gunpoint. The investigating officers received reports of the involvement of a black male and a Hispanic male wearing a black ski mask. On May 16, 2012, another Cricket store was robbed, and the complainant reported that the robber was a Hispanic male wearing a black ski mask. After reviewing the offense reports and available surveillance footage, police believed that these robberies were related to the April 28, 2012 robberies. Appellant was not charged with either of these two crimes.

On May 17, 2012, another Cricket store was robbed at gunpoint. The complainant in this robbery positively identified appellant as the robber. Appellant was charged with and pleaded guilty to this offense.

On May 18, 2012, a Boost Mobile store was robbed by a male in a black ski mask. Again, police reviewed the offense report and available surveillance footage and formed the belief that this robbery was related to the April 28, 2012 robberies.

4

On May 23, 2012, another Boost Mobile store was robbed at gunpoint by a Hispanic male in a black ski mask. The complainant in this robbery positively identified appellant as the robber. However, appellant was not charged with this offense.

On June 1, 2012, another Cricket store was robbed at gunpoint by a Hispanic male in a black ski mask. The complainant followed the robber and saw the Hispanic male and a black male drive away in a white Toyota Venza. The complainant was able to identify appellant as the robber. On June 2, 2012, police arrested and interrogated both appellant and Williams. Appellant was originally uncooperative and "manipulative." Williams admitted his involvement with the June 1, 2012 robbery. Appellant also eventually admitted his involvement in the June 1, 2012 robbery. He was charged with and pleaded guilty to this offense.

The PSI stated that appellant was charged with and pleaded guilty to the April 28, 2012 robbery of Sha'De Jones's SUV, the May 17, 2012 Cricket store robbery, and the June 1, 2012 Cricket store robbery. The PSI listed the remaining robberies—the Cricket store robberies occurring on April 28, May 3, and May 16, and the Boost Mobile store robberies occurring on May 18 and May 23—as "Extraneous Offenses."

The PSI also included appellant's own statement, in which he related details of his involvement in the offenses to which he had pleaded guilty. Appellant stated

5

that he was pressured into robbing Jones by his friends, and he knew they wanted the vehicle to use to commit some robberies. He stated that he did not participate in the robbery of the Cricket store that occurred on April 28, 2012—the same day that he robbed Jones of her SUV. He acknowledged that the offense reports accurately described both the May 17, 2012 and June 1, 2012 Cricket store robberies.

Appellant also gave a statement regarding his remorse over the commission of the robberies to which he pleaded guilty. He stated, in part:

> I was so scared during the robberies. I would take it all back if I could and wish I could give the victims my most sincere apologies. I didn't realize the consequences my actions would have. I had no intention of ever causing physical harm to ANYBODY. I never had my finger on the trigger. Those were the poorest decisions of my life. No excuse could ever make my actions right. I am sorry. And seek forgiveness every day.

Attached to the PSI were multiple letters from various members of the community expressing support for appellant and a desire to help him live a productive life if the trial court were to grant him probation. Appellant's psychologist also attached a letter detailing appellant's difficult upbringing. Appellant was removed from his biological parents at a young age and lived in various foster homes and group homes until he was adopted at age seven. His adoptive parents' marriage ended in a bitter divorce a few years later due to the fact that his adoptive mother was an alcoholic. In the years leading up to the

robberies, appellant did not live at home—he went from friend to friend or occasionally slept on the streets.

The PSI also detailed appellant's prior criminal record as an adult. The PSI reported that he was convicted of graffiti in 2009 and served ninety days in the Harris County Jail. In 2009 and again in 2012, he served several days in Harris County Jail for possession of marijuana. In 2011, he served ten days in Harris County Jail for theft. He also had charges for possession of a controlled substance and criminal trespass that were dismissed.

At the punishment hearing, neither the State nor appellant's trial counsel objected to the PSI, and both sides affirmatively stated that they did not have any additions to make to the PSI. Sha'De Jones testified about the robbery of her SUV. She identified appellant as the robber and testified that he pointed a gun at her head and that it was so close it almost touched her forehead. She stated that she was traumatized by the robbery and was still scared to sit in her car with the windows down. Appellant's adoptive father and his biological brother both testified on appellant's behalf. They related details of appellant's difficult life and stated that they were willing to support appellant in seeking employment and living a productive life if the trial court were to grant him probation. They testified that they believed appellant was ultimately a good-hearted person who was led astray by bad friends.

7

Appellant also testified on his own behalf. He testified that he never meant to hurt anyone and believed he deserved a second chance. He stated that he was a completely different person at the time of the hearing than he had been when he committed the robberies.

In its closing arguments, the State emphasized the fact that appellant had pleaded guilty to three aggravated robberies that occurred over the course of several weeks. The State argued that this demonstrated that appellant was not temporarily led astray by some bad influence, but that he had repeatedly determined to commit violent crimes. The State requested that appellant "be sentenced to significant time in the penitentiary for the act that he committed against these three complainants." Appellant's trial counsel emphasized appellant's difficult background and the amount of support he had from his family in asking the trial court to give him deferred adjudication.

The trial court assessed appellant's punishment at twenty-five years' confinement for each count of aggravated robbery, with the sentences to run concurrently. The trial court stated, "I hope you've learned your lesson, but I cannot take a chance on that based on the information that has been provided to me in this hearing. Good luck to you, sir." At no time during the punishment hearing did anyone refer to the extraneous offenses contained in the PSI.

Appellant did not file a motion new trial.  Accordingly, the record does not contain any additional evidence regarding the offenses committed by appellant, and it does not contain any testimony or an affidavit from appellant's trial counsel.

**Analysis**

In his sole issue on appeal, appellant argues that he received ineffective assistance of counsel.  Specifically, he argues that his counsel was deficient in failing to object to the inclusion of extraneous offenses in the PSI that had not been conclusively established to involve appellant.

To make a showing of ineffective assistance of counsel, an appellant must demonstrate that (1) his counsel's performance was deficient, and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008).  The appellant must prove ineffectiveness by a preponderance of the evidence.  *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).  "Failure of appellant to make either of the required showings of deficient performance and sufficient prejudice defeats the claim of ineffective assistance."  *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An

9

appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

To satisfy the first prong of *Strickland*, the defendant must show that his counsel's performance fell below an objective standard of reasonableness. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong of *Strickland* requires the defendant to demonstrate prejudice—"a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Id.* at 689, 104 S. Ct. at 2065; *Williams*, 301 S.W.3d at 687. Our review is highly deferential to counsel, and we do not speculate regarding counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To prevail, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy. *Mallett*

*v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *see Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness).

In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Mallett*, 65 S.W.3d at 63. Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, the Court of Criminal Appeals has stated that trial counsel should ordinarily be given an opportunity to explain his or her actions before a court reviews that record and concludes that counsel was ineffective. *See Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 836; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *see also Massaro v. United States*, 538 U.S. 500, 504–05, 123 S. Ct. 1690, 1694 (2003) ("When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.").

Here, appellant complains that his counsel was deficient for failing to object to the extraneous offenses included in his PSI. Prior to sentencing by the trial court in a felony case, the judge shall direct a community supervision officer to prepare a PSI report, and the trial court is statutorily permitted to consider the report. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9(a) (Vernon Supp. 2013); *id.* art. 37.07, § 3(d) (Vernon Supp. 2013). The trial court shall allow the

11

defendant or his counsel to review and comment on the report, and, with leave of the court, proffer evidence as to any factual inaccuracies contained in the PSI. *See id.* art. 42.12, § 9(d), (e). The allegation that information in the report is inaccurate does not render the report inadmissible. *Stancliff v. State*, 852 S.W.2d 630, 632 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Rather, the defendant bears the burden of proving that the information was materially inaccurate and that the judge relied upon it. *Id.*

If the PSI report contains information regarding extraneous offenses, "Section 3(a)(1) of Article 37.07 [of the Code of Criminal Procedure] does not prohibit a trial court, as a sentencing entity, from considering extraneous misconduct evidence in assessing punishment just because the extraneous misconduct has not been shown to have been committed by the defendant beyond a reasonable doubt, if that extraneous conduct is contained in a PSI." *Smith v. State*, 227 S.W.3d 753, 763 (Tex. Crim. App. 2007). Rather, the trial court may consider extraneous acts contained in a PSI not proven beyond a reasonable doubt if there is some evidence from some source (including the PSI itself) from which the trial court may rationally infer that the defendant had any criminal responsibility for the extraneous offense. *Id.* at 764.

Appellant argues that his trial counsel was ineffective because she failed to object to the inclusion of extraneous offenses in his PSI, namely the Cricket store

robberies occurring on April 28, May 3, and May 16, and the Boost Mobile store robberies occurring on May 18 and May 23. Specifically, appellant argues that these offenses were not clearly attributable to appellant and counsel should have objected to their inclusion in the PSI.

Appellant did not file a motion for new trial, so there is no record of trial counsel's motives at trial. While it is possible that a single egregious error by counsel may constitute ineffective assistance, *see Thompson*, 9 S.W.3d at 813, counsel's failure here to object to the extraneous offenses included in the PSI could have occurred for numerous reasons. For example, trial counsel could have concluded that any objection to the extraneous offenses would have been overruled by the trial court based on the holding in *Smith* that the trial court may consider extraneous acts contained in a PSI if there is some evidence from some source (including the PSI itself) from which the trial court may rationally infer that the defendant had any criminal responsibility for the extraneous offense. *See* 227 S.W.3d at 764; *see also Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (holding that appellant must show that trial court would have committed error by overruling objection to show ineffective assistance of counsel based on failure to object). Or trial counsel might have relied on the fact that the extraneous offenses were not mentioned even one single time at the sentencing hearing and made a strategic decision not to call further attention to those offenses by objecting

to them.  *See McKinny v. State*, 76 S.W.3d 463, 473 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (stating that counsel may decide not to object to inadmissible evidence for strategic reasons).

Moreover, to the extent that appellant is arguing that his counsel was ineffective for failing to present evidence to the trial court contradicting the accounts of the robbery investigations contained in the PSI, his claim likewise fails.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 9(d), (e) (providing that defendant may, with leave of court, proffer evidence as to any factual inaccuracy in PSI); *Stancliff*, 852 S.W.2d at 632 (holding that allegation of inaccurate information in PSI does not render report inadmissible and defendant bears burden of proving that information was materially inaccurate and that trial court relied upon it).  Claims of ineffective assistance must address specific acts or omissions. *Bone*, 77 S.W.3d at 836 (holding that claim of ineffective assistance of counsel must address specific acts or omissions).  An attorney's failure to present evidence may support an ineffective assistance claim only where it is shown that witnesses or other evidence would have been available and that presentation of the evidence would have benefitted the appellant.  *Pinkston v. State*, 744 S.W.2d 329, 332 (Tex. App.—Houston [1st Dist.] 1988, no pet.).  Because appellant did not file a motion for new trial, nothing in the record identifies any specific evidence regarding the

alleged material inaccuracies in the PSI that his trial counsel could have introduced at the punishment hearing.

Because of the undeveloped state of the record, we simply cannot determine that appellant has overcome the presumption that the challenged action constituted "sound trial strategy." *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Williams*, 301 S.W.3d at 687. Appellant has failed to meet his burden of providing an appellate record that affirmatively demonstrates that his trial counsel's performance was not based on sound strategy, and we do not speculate regarding counsel's trial strategy. *See Bone*, 77 S.W.3d at 833; *Mallett*, 65 S.W.3d at 63.

Furthermore, even if appellant could establish that his counsel's performance was deficient on this ground, he cannot show that he was prejudiced by it. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. The record contains no evidence that the trial court considered the extraneous incidents in assessing appellant's punishment. Instead, the prosecutor, appellant's trial counsel, and the trial court referred only to the three aggravated robberies to which appellant pleaded guilty. The trial court assessed appellant's punishment at confinement for twenty-five years, which is on the lower end of the punishment range for aggravated robbery with a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2013) (providing that aggravated robbery is first-degree felony);

15

*id.* § 12.32 (Vernon 2013) (providing that first-degree felony is punishable by imprisonment for term of life or not less than five years).

Appellant relies on *Townsend v. Burke*, 334 U.S. 736, 68 S. Ct. 1252 (1948), to support his argument that his counsel's performance was deficient and prejudiced him in this case. However, *Townsend* is distinguishable, as it did not address the sufficiency of counsel's performance. *Id.* at 740–41, 68 S. Ct. at 1255 (observing that defendant was not represented by counsel). Furthermore, the facts in *Townsend* were different from those in the present case. In *Townsend*, the Supreme Court observed that the trial court questioned the defendant regarding offenses for which he had actually been found not guilty or which had been dismissed. *Id.* Here, the PSI clearly set out the results of the police investigations for the three crimes to which appellant pleaded guilty, and it set out the details of other offenses which the police believed were related. The PSI stated that appellant had not been charged with the extraneous offenses.

Appellant also argues that the totality of his trial counsel's representation was defective. He argues that on two occasions, counsel referred to herself as "the State": once, when she called appellant's brother as a witness and said, "The State would call Robert Akbari. Excuse me, the Defense," and again when she made a similar statement in calling appellant's father. Appellant also argues that his counsel emphasized that Jones "was pretty young when you robbed her, wasn't

16

she" and that she "strangely emphasized" the PSI's account of appellant's CPS history without providing those CPS records to the trial court. Finally, appellant complains that his trial counsel's closing argument "briefly discussed [appellant's] adoption but then concluded, 'It doesn't excuse committing a bunch of aggravated robberies.'"

It is true that we evaluate claims of ineffective assistance of counsel by looking to the totality of the representation. *See Thompson*, 9 S.W.3d at 813. However, the record does not support appellant's arguments that these statements, even if they were erroneous, had the effect of establishing "a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. Appellant's trial counsel's questioning of witnesses and closing argument repeatedly emphasized appellant's difficult childhood and the support he had from his family and community, while at the same time acknowledging that appellant realized the magnitude of his crimes, was truly sorry, and had made a concentrated effort to change the way he lived his life. In the totality of the circumstances, we cannot conclude that counsel's isolated statements undermine confidence in the outcome of appellant's punishment hearing. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *see also Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding

17

that isolated instances in record reflecting errors of omission or commission do not render counsel's performance ineffective).

We overrule appellant's sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).