**Affirmed and Memorandum Opinion filed November 5, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00403-CR

---

### CEDRIC TRAVAUGHN HOPES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1342020**

---

## M E M O R A N D U M   O P I N I O N

Appellant Cedric Travaughn Hopes appeals his sentence of thirty-five years in prison for aggravated robbery with a deadly weapon, arguing he is entitled to a new punishment hearing. In his first issue, appellant contends the trial court erred in admitting expert testimony regarding his gang tattoos. We conclude the trial court did not abuse its discretion in concluding that the expert witness was qualified to testify. In his second issue, appellant argues he was denied due

process because the trial court, in assessing punishment, considered irrelevant evidence of appellant's purported gang affiliation. We conclude that a court may consider such evidence at punishment because it can be relevant to demonstrate the character of a criminal defendant. In this case, we hold the tattoo evidence was relevant to show appellant's gang membership.

In his third issue, appellant asserts that the trial court violated his substantial rights by considering evidence of an extraneous offense that was not sufficiently supported by the record. We conclude that appellant did not object to the introduction of the evidence and has not shown that he was excused from doing so; therefore, he has not preserved this complaint for appellate review. We affirm the judgment of the trial court.

## BACKGROUND

We provide only a brief description of the facts concerning the offense of which appellant was convicted because appellant's three issues on appeal relate solely to the punishment phase of the trial. On February 19, 2011, two individuals wearing masks robbed an Auto Zone store. The store manager was held at gunpoint and instructed to empty the safe. The individuals left the store and got into a black Impala. A few minutes later, police stopped a black Impala matching the description of the vehicle used during the robbery. Appellant was inside the car wearing all-black clothing. Three other individuals were also in the car, including a four-year-old child. Inside the car, officers found guns, ski masks, gloves, and a bag containing money. Appellant was tried and convicted for aggravated robbery with a deadly weapon. The trial court sentenced appellant to thirty-five years' imprisonment. This appeal followed.

ANALYSIS

## I.    The trial court did not abuse its discretion in admitting Sergeant Ponder's gang-affiliation testimony during the punishment phase.

In his first issue, appellant claims that the trial court erred in admitting expert testimony from Sergeant Clint Ponder concerning appellant's gang tattoos.

### A.    Standard of review and applicable law

Rule 702 of the Texas Rules of Evidence provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Tex. R. Evid. 702. Before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). "The three requirements raise distinct questions and issues, and an objection based on one of these requirements does not preserve error as to another." *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

A trial court has broad discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case because the possible spectrum of qualifying education, skill, or training is wide. *Rodgers*, 205 S.W.3d at 527–28. In *Rodgers*, the Court of

Criminal Appeals set forth three factors to consider in determining whether a trial court abused its discretion in ruling on an expert's qualifications. *Id.* at 528. The first factor is whether the field of expertise is complex, as the degree of education, training, or experience that a witness should have before he can qualify as an expert is directly related to the complexity of the field about which he proposes to testify. *Id.* If the expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience. *Id.* For example, DNA profiling is scientifically complex, while latent-print comparison is not. *Id.*

The second factor is the conclusiveness of the expert's opinion. *Id.* The more conclusive the opinion, the more important the expert's degree of expertise. *Id.* Testimony that a given profile occurred one time in 2.578 sextillion—a number larger than the number of known stars in the universe—requires a much higher degree of scientific expertise than testimony that the defendant's tennis shoe could have made the bloody shoe print found on a piece of paper in the victim's apartment. *Id.*

The third factor is the centrality of the area of expertise to the resolution of the lawsuit. *Id.* The importance of the expert's qualifications is directly proportional to the degree to which the area of expertise is dispositive of the disputed issues. *Id.* We must review the trial court's ruling in light of what was before that court at the time the ruling was made. *Id.*

### B. Preservation of error

The State argues that appellant's complaints on appeal regarding the admission of Sergeant Ponder's testimony were not preserved for our review because appellant's trial counsel, after questioning Sergeant Ponder about his qualifications, objected only "to the relevance of this witness, and as to whether or

4

not under *Daubert,* that [the witness] can make a conclusion as an expert concerning [appellant] and any street gang, based upon anything he may have observed."[1] The State contends that Sergeant Ponder did not testify as to whether appellant was a gang member but instead gave some background regarding two gangs, the Crips and Bloods, and the meaning of appellant's tattoos. *See Wilson v. State,* 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (stating that to preserve error, appellant's complaint on appeal must comport with the objection made at trial).

We find this argument unpersuasive. The point of Sergeant Ponder's testimony regarding the meaning of appellant's tattoos was to provide evidence on the question whether appellant was in fact a gang member. As explained below, however, we do agree that appellant's objection did not alert the trial court to some of the complaints he now raises on appeal regarding the admission of Sergeant Ponder's testimony. Accordingly, those complaints are not preserved for our review. *See* Tex. R. App. P. 33.1(a).

## C.    Sergeant Ponder's qualifications

Appellant first argues that Sergeant Ponder was not qualified to testify as an expert on interpretation of gang tattoos. Assuming this challenge to Ponder's qualifications was included within the objection appellant made at trial, we hold that Ponder satisfied the three criteria to be qualified as an expert under *Rodgers.* With regard to the first factor, the field of gang membership and the meaning of appellant's tattoos are not scientifically complex. Sergeant Ponder testified that the Crips are a prominent criminal street gang that began in Los Angeles. He further testified that, over time, individuals in Houston began identifying as Houston Crips. Sergeant Ponder stated that the acronym "O.G." in one of appellant's tattoos stands for "original gangster." He read aloud for the court

---

[1] Appellant's trial counsel obtained a running objection from the trial court.

5

another tattoo that said "crip for life." Another tattoo read "Blood killer," which Sergeant Ponder testified was significant because the Crips and Bloods are rival gangs. Another tattoo read "187," which Ponder testified was the California Penal Code section defining murder.[2]

Moreover, Sergeant Ponder testified that he had been with the Houston Police Department for approximately seventeen years and had spent most of his time in the Fondren Divisional Gang Unit. He testified that he had attended numerous conferences and classes on gangs and that he had conducted trainings and taught classes on identifying criminal street gangs. Sergeant Ponder indicated that in the previous ten years, he had documented over 700 gang members and had been called to testify as an expert witness approximately ten to fifteen times. He held membership in the Texas Gang Investigator Association. We conclude Sergeant Ponder's training and experience qualified him to testify as an expert in this field.

As to factor two, Sergeant Ponder's testimony was not conclusive regarding whether appellant was a member of a gang. Instead, he testified that "I'll say what the tattoos mean and . . . it's open to the interpretation of the Court." With regard to factor three, the testimony was not dispositive of the disputed issues. A jury already had found appellant guilty of aggravated robbery with a deadly weapon. Sergeant Ponder's testimony occurred during the punishment phase. His testimony provided context for appellant's character, which are not dispositive considerations in imposing a sentence. All three *Rodgers* factors therefore demonstrate that the trial court did not abuse its discretion in ruling that Sergeant Ponder was qualified to testify as an expert.

Appellant further argues that Ponder does not qualify as an expert because

---

[2] *See* Cal. Penal Code § 187 (West, Westlaw through 2015).

6

he could not name all eight criteria the State uses to identify potential gang members for inclusion in its gang member database. The record demonstrates that Ponder named seven of the criteria but could not remember the eighth. Given Ponder's experience, detailed above, we do not see why this one fact should disqualify him from testifying about gang membership.[3]

Turning to reliability, appellant argues Sergeant Ponder's testimony is unreliable because it is "not grounded 'in methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Acevedo v. State*, 255 S.W.3d 162, 168–69 (Tex. App.—San Antonio 2008, pet. ref'd). According to appellant, the State failed to show reliability because Sergeant Ponder did not testify regarding peer review of his methods, their potential for error, or the statistical standards and techniques used. We do not consider this argument, however, because appellant did not preserve it for our review by objecting at trial that Sergeant Ponder's testimony was unreliable and securing an adverse ruling. *See Turner v. State*, 252 S.W.3d 571, 584 n.5 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding objection based on expert's qualifications did not preserve reliability challenge). We overrule appellant's first issue.[4]

## II. The evidence concerning appellant's gang membership was relevant because it related to appellant's character.

In his second issue, appellant argues that he was denied Due Process under the United States Constitution and Due Course of Law under the Texas

---

[3] Appellant also argues that tattoos are not alone sufficient to establish gang membership. Appellant relies on Ponder's testimony that an individual could not be put into the State's gang database unless the individual met two of the eight criteria. But this testimony relates solely to the database. In any event, even if appellant were correct, this fact would not disqualify Ponder from testifying as an expert in the field of gang membership.

[4] Because we conclude the trial court did not abuse its discretion in admitting Sergeant Ponder's testimony, we need not address appellant's claim that the testimony affected his substantial rights. *See* Tex. R. App. 44.2(b).

Constitution because the trial court considered evidence regarding gang affiliation in assessing punishment. Appellant contends the court violated these constitutional provisions because the evidence was irrelevant.

Appellant has not explained how any consideration the trial court gave this evidence raises constitutional concerns. Thus, the question is simply whether the testimony is relevant. In *Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995), the Court of Criminal Appeals stated that "evidence concerning [a criminal defendant's] gang membership is relevant [at the punishment phase] because it relates to his character." According to *Beasley*, "it is not necessary to link the accused to the bad acts or misconduct generally engaged in by gang members, so long as the [fact-finder] is . . . provided with evidence of the defendant's gang membership . . . ." *Id.* at 457.[5]

Appellant argues that Sergeant Ponder's testimony did not satisfy *Beasley* because Ponder did not provide adequate evidence of appellant's gang membership. Appellant asserts that testimony regarding tattoos is insufficient to show gang membership. We disagree. Sergeant Ponder's testimony that the letters "O.G." in one of appellant's tattoos meant "original gangster," his explanation that the numbers "187" in another tattoo represented the California Penal Code section for murder, his discussion of appellant's "crip for life" tattoo, and his discussion of appellant's "Blood killer" tattoo are relevant evidence of gang membership. We overrule appellant's second issue.

## III. Appellant did not preserve his challenge to the extraneous-offense evidence introduced in the punishment phase.

In his third issue, appellant contends that the trial court relied on evidence of

---

[5] *Beasley* also includes other requirements, but because appellant challenges only the requirement quoted above, we do not discuss the others.

an extraneous offense when assessing punishment. Appellant argues the trial court erred in doing so because appellant's involvement in the offense was not sufficiently supported by the record. Appellant contends there is no evidence linking him to the crime.

During the punishment phase, the State presented evidence of another robbery that occurred six days before the Auto Zone robbery of which appellant was found guilty. Claudia Castillo, the assistant manager of a Family Dollar store, testified that at approximately 8:45 on the evening of February 13, 2011, two African-American men robbed the store with pistols. Both men were wearing black shirts. She testified that she could not see the men's faces because they were both wearing masks. One of the men instructed her to empty the register into a bag. Castillo identified the bag used during the Auto Zone robbery, previously admitted as State's Exhibit 37, as either the same as or substantially similar to the one used during the Family Dollar robbery. One assailant then asked Castillo to open the safe located in the back of the store. She did so and put the money in the bag. The robbers tied her and her co-worker using electrical cords and then left the store.

Officer Martha Medellin of the Houston Police Department also testified regarding the Family Dollar store robbery. Officer Medellin testified that on the evening of the robbery, she and her partner were dispatched to investigate a report of a suspicious vehicle. When the officers reached the area, they found a black Impala near the Family Dollar store. She wrote down the license plate of the vehicle because in her two years patrolling the area, she had never seen a car parked in that location. The license plate matched the license plate of the black Impala appellant occupied when he was arrested on February 19, 2011, following the Auto Zone robbery. Officer Medellin testified that she did not see anyone

9

inside the vehicle. She kept driving. A few minutes after she observed the parked car, she received a call about the Family Dollar robbery. When she arrived at the Family Dollar store, she noticed that the Impala was no longer there.

## A. Applicable law

Texas Code of Criminal Procedure Article 37.07, which governs the punishment phase of trial, permits evidence of extraneous offenses committed by a defendant to be introduced during the punishment phase to the extent the court deems the evidence relevant to sentencing. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a) (West 2006). If the State offers such evidence, it must prove the extraneous acts of misconduct beyond a reasonable doubt. *Id.* The trial court is the authority on the threshold issue of the admissibility of relevant evidence during the punishment phase of the trial. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996).

## B. Standard of review

Although the reasonable-doubt standard required for conviction also applies at the punishment stage to proof of the defendant's extraneous acts of misconduct, we do not review such proof under an evidentiary sufficiency standard. *Malpica v. State*, 108 S.W.3d 374, 378 (Tex. App.—Tyler 2003, pet. ref'd). Because the verdict on punishment in a non-capital criminal case is a general verdict, an appellate court cannot determine whether the sentencer considered the evidence of the extraneous offense or whether it affected the sentencer's determination of punishment. *Thompson v. State*, 4 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Therefore, we treat sufficiency challenges to extraneous-offense evidence at the punishment stage as challenges to the trial court's threshold ruling admitting the evidence, and we employ an abuse-of-discretion standard of review. *Palomo v. State*, 352 S.W.3d 87, 94 (Tex. App.—Houston [14th Dist.]

10

2011, pet. ref'd).

## C.     Preservation of error

To preserve error in the admission of extraneous-offense evidence, the defendant first must object under Rule 404(b) of the Texas Rules of Evidence. *Thompson*, 4 S.W.3d at 886-87.  The State then must show that the evidence is relevant, and, at the defendant's request, the State may be required to articulate the limited purpose for which the evidence is being offered.  *Id.* If the trial court determines the evidence is relevant, the defendant must further object and obtain a ruling under Rule 403 of the Texas Rules of Evidence.  *Id.*

Appellant did not object to the testimony concerning the Family Dollar store robbery at the time it was offered.[6]  He therefore did not preserve the issue for our review.  Tex. R. App. 33.1(a).

Appellant relies on *Smith v. State*, 227 S.W.3d 753, 764 (Tex. Crim. App. 2007), a case in which the Court of Criminal Appeals stated: "We think it obvious that it would violate due process for a trial court to consider evidence of extraneous misconduct . . . if there was no evidence from any source from which it could be rationally inferred that the defendant had any criminal responsibility for that extraneous misconduct."  Appellant claims there was no evidence linking him to the robbery of the Family Dollar store because he was not identified by Castillo.

*Smith* does not support appellant's position.  *Smith* involved a trial court's order of a presentence investigation report (PSI) under section 3(d) of article 37.07 of the Texas Code of Criminal Procedure.  *See Smith*, 227 S.W.3d at 755.  Article 42.12, which governs community supervision, defines what a PSI may contain, including "any other information relating to the defendant or the offense requested

---

[6] Appellant did object during the prosecutor's closing argument, but that objection was untimely.

by the judge." Tex. Code Crim. Proc. Ann. art. 42.12 § 9(a) (West 2006). The court examined

> the convergence of two statutory provisions: 1) Article 37.07, Section 3(a)(1), which governs the "evidence" that "may be offered" at the punishment phase of a criminal case, whether the sentence assessor is judge or jury, and 2) Article 37.07, Section 3(d), which authorizes a trial court to "consider" the contents of the PSI as authorized in Article 42.12, Section 9(a) in assessing punishment, without apparent limitation.

*Smith*, 227 S.W.3d at 759. The court stated the issue as follows:

> By conditioning the admissibility of extraneous misconduct evidence at a punishment hearing upon a showing that the defendant committed that misconduct beyond a reasonable doubt, did the Legislature also intend to narrow the scope of the "consideration" to which a trial judge can put extraneous misconduct evidence that appears in a PSI? If he finds that the PSI fails to establish the defendant's criminal responsibility for the extraneous misconduct to that high level of confidence, may he still consider it in assessing punishment, or must he instead restrict his consideration of the misconduct evidence to the question of whether community supervision should be imposed?

*Id.* at 762. The court held "that Section 3(a)(1) of Article 37.07 does not prohibit a trial court, as a sentencing entity, from considering extraneous misconduct evidence in assessing punishment just because the extraneous misconduct has not been shown to have been committed by the defendant beyond a reasonable doubt, if that extraneous misconduct is contained in a PSI." *Id.* at 763. But the trial court never admitted the PSI into evidence. *See id.* at 757 ("The PSI was never formally introduced into evidence, but it was included in the appellate record."). The court concluded the record was ambiguous on whether the trial court did consider the evidence in the PSI in assessing punishment and remanded to the trial court for reassessment of punishment. *Id.* at 764. The statement from *Smith* cited by appellant was dicta. Moreover, in *Smith*, the defendant objected to the introduction

of the PSI. *See id.* at 755–56.

Even if *Smith* modified the cases holding there is no sufficiency review of extraneous-offense evidence during the punishment phase, an issue we need not decide, we conclude this is not the sort of no-evidence case mentioned in *Smith*. Just a few minutes after the Auto Zone robbery, appellant was detained in a black Impala wearing black clothing, and the Impala contained masks, pistols, and a bag filled with money. The license plate on the car matched the license plate on the Impala Officer Medellin spotted on the night of the Family Dollar robbery, and as the trial court noted, even though the witnesses of the Family Dollar robbery did not identify appellant, the modus operandi was the same: two masked men dressed in black and armed with pistols forcing the store manager to put money into a substantially similar bag. This evidence is certainly some circumstantial evidence from which it could be rationally inferred that appellant was involved in the Family Dollar robbery. We overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's three issues on appeal, we affirm the judgment of the trial court.

/s/    J. Brett Busby
        Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).